M. Henry Martuscello, J.
This is an action for injunctive and declaratory relief brought by four licensed plumbing contractors against Brooklyn Union Gas Co. (“Brooklyn Union”), the City of New York (“City”), and various builders.
Plaintiffs seek a judgment declaring (1) that under the Administrative Code of the City of New York (“Code”) and other applicable statutes, only licensed plumbers may install gas *1084 piping from a consumer’s property line to within the consumer’s building; and (2) that only material prescribed by the Code may be used in connection with such work; and (3) that the City shall not allow or approve such work unless done by a licensed plumber or under his supervision. A permanent injunction is also sought to restrain the defendants other than the City from installing or permitting the installation of such gas piping except by a duly licensed plumber.
Plaintiffs now move for a preliminary injunction pending the trial of the action.
All the defendants have answered and oppose plaintiffs’ motion; and except for defendant City, cross-move for judgment dismissing the complaint upon the ground that it fails to state a cause of action, or in the alternative, for summary judgment upon the ground that there are no triable issues of fact nor is there merit to the action. As intervener, Local 101 TWU, AFL-CIO, representing employees of Brooklyn Union, opposes the motion for injunctive relief.
It appears that Brooklyn Union, with the permission and approval of the City, is installing gas service piping from the street main to within the walls of buildings on premises of the defendant builders, and is replacing old gas service installations on various other premises, using for such work its own employees or contractors, none of whom is a licensed plumber.
Plaintiffs challenge Brooklyn Union’s right thus to install or replace gas services on consumers’ premises, claiming (1) that it is not authorized by its charter nor obligated by any statute to engage in such operations, and (2) that subdivision b of section C26-164.0 of the Code requires the installation of gas service from the property line to within the building by a licensed plumber and prohibits installation by employees or contractors of a public utility corporation.
Brooklyn Union asserts that it does have corporate and statutory authority to make such installations, and all defendants contend that subdivision b of section C26-164.0 has no application to .services installed by a public utility.
Plaintiffs further claim that Brooklyn Union uses copper tubing in violation of provisions of the Code specifying the material to be used for gas service purposes.
Brooklyn Union denies this charge. Section C26-1326.0 of the Code permits the use of steel, wrought iron, brass, and copper pipes, provided they conform to certain specifications therein set forth. Thus, copper pipe must conform to the standard specifications of A. S. T. M. (American Society for *1085 Testing and Material) Designation B 42-49. Two officers of Brooklyn Union, in affidavits submitted by them, aver that approved wrapped steel pipe is used for all original and replacement gas service installations; and that, with the approval of the Building Department of the City, copper tubing conforming to the standard required for copper pipe set forth in section C26-1326.0 is used in connection with renewed services which involve merely the insertion of such tubing through the sleeves of the original steel pipes.
These averments being in nowise disputed by plaintiffs, I find that the use of copper tubing in the manner indicated does not violate section C26-1326.0 or any other provisions of the Code specifying what materials are permissible for gas services. Moreover, even if a violation thereof did exist, same would be unavailing to the plaintiffs since they have failed to allege or show how the use of copper tubing in any way affects their legal rights or interests, requiring the intervention of the equitable jurisdiction of this court for redress thereof (Leonard v. John Hancock Mut. Life Ins. Co., 118 N. Y. S. 2d 170, affd. 281 App. Div. 859; Gold Sound v. City of New York, 195 Misc. 291).
Turning now to plaintiffs’ claim that Brooklyn Union lacks corporate and statutory authority to install services beyond the consumer’s property line, I find that this too lacks merit.
Brooklyn Union was organized in 1895 as a gas corporation under the Transportation Corporations Law. Its operations are subject to the jurisdiction of the Public Service Commission of this State and its charges and services are regulated by the Commission through filed rate schedules. (Public Service Law, §§ 65, 66.)
The claim that Brooklyn Union is not empowered by its charter to make the installations in question is in no way substantiated by the plaintiffs. Further, they could not urge ultra vires, as such a claim would be available only to a stockholder, the corporation itself or the Attorney-General. (Business Corporation Law, § 203.)
The Transportation Corporations Law provides:
“ § 12. Gas and electricity must be supplied on application. Upon written application of the owner or occupant of any building within one hundred feet of any main of a gas corporation * * * it shall supply gas * * * as may be required for lighting such building * * * provided that no such corporation shall be required to lay service pipes * * * to any applicant where the ground in which such pipe * * * is required to be laid shall be frozen, or shall otherwise present *1086 serious obstacles to laying the same; nor unless the applicant, if required, shall deposit in advance with the corporation a sum of money sufficient to pay the cost of his proportion of the pipe * * * required to be installed, and the expense of the installation of such portion. ’ ’
This section has been construed as imposing an obligation upon a gas corporation to furnish service and to lay service piping to an applicant’s building within 100 feet of its main, provided the applicant, if required, pays the cost of its installation from the property line to within the wall of the building (City of Rochester v. Rochester Gas & Elec. Corp., 233 N. Y. 39, 46; Draney v. Central Hudson Gas & Elec. Co., 10 N. Y. St. Dept. Rep. 330).
Under the rate .schedule filed by Brooklyn Union with the Public Service Commission, the service pipe in the street and its extension within the property line up to 50 feet are installed without cost to the consumer. Beyond said 50 feet a charge is made.
Upon request for gas service, Brooklyn Union installs the gas service from the main to within the consumer’s building with its own employees or by contractors. This method of installation has been employed by it ever since it was organized in 1895. It appears that other public utility corporations supplying gas in this City have used the same method for many decades.
In 1937 the Legislature enacted the Administrative Code of the City of New York (L. 1937, ch. 929).
Subdivision b of section C26-164.0 of the Code, relied upon by plaintiffs to support their claim that the installations involved herein must be made by licensed plumbers, has existed without any substantial change since the original enactment of said Code. So far as is pertinent here, it provides as follows: “ b. Plumber’s statement. — 1. It shall be unlawful to commence any plumbing or gas piping work * * * [except ordinary repairs], until a registered plumber has signed the specifications and filed a signed statement * * * stating that he is duly authorized to proceed with the work.”
Plaintiffs contend that gas piping work referred to therein . includes not only house piping but also the gas service piping and that it is unlawful for a plumber to file a statement when in fact the gas service is to be installed by a public utility. Further, they claim that Brooklyn Union has “ knowingly permitted and allowed affidavits and other documents to be made and filed with the Department of Buildings ” to show a licensed plumber would install the gas services at the premises of the defendant builders. This alleged conduct is unequivocally denied *1087 by Brooklyn Union, and by inspectors of the Building Department as well, and plaintiffs have failed to present any evidence tending to impugn such denial.
The City, through its Department of Buildings, in interpreting and applying the pertinent statutory provisions, has never required any public utility to employ the services of licensed plumbers when the public utility installs or replaces gas service piping from a consumer’s property line within the wall of the building.
In 1951 Consolidated Edison Company, one of the three public utilities supplying gas services in this City, discontinued its former practice of installing gas service piping from its main to within the consumer’s building; and since then, at its option, has generally installed the original gas services only to the property line, from which point the consumer, at his own cost, continues and maintains the gas service.
Gas piping work referred to in subdivision b of section C26164.0 of the Code is a general term broad enough to mean the service piping from the property line to the consumer’s building, as is contended by the plaintiffs. However, when said section is read with other sections of the Code which are in pari materia with it, the meaning of this term becomes doubtful and obscure. Thus, section C26-1334.0 of the Code provides in part as follows: “ Test of Gas Piping.— After all house piping is installed, the plumber shall make air pressure tests on the house piping and the service piping he has installed. * * * The maximum expected pressure on the gas service piping installed by the plumber shall be obtained from the utility company serving the area”. (Emphasis supplied.) The implication of the above-quoted matter is that all service piping is not required to be done by plumbers. That which is implied in a statute is as much a part of it as what is expressed (Gilbert v. Craddock, 67 Kans. 346, 353). Such implication is made clear in the last sentence of said section which provides: “ Nothing in this section shall be construed as requiring a plumber to test any piping installed by persons or corporations subject to the jurisdiction of the public service commission of the state of New York.” (Emphasis supplied.) This surely indicates that persons or corporations subject to the jurisdiction of the Public Service Commission might continue to install service piping and that such installation was lawful. Section C26-1327.0 of the Code carries a similar implication.
The last two sections, and other sections relating to gas piping, are revisions made by the City Council in 1953, in consequence of the above-mentioned discontinuance by Consolidated *1088 Edison of installations and pursuant to a recommendation made by the then Commissioner of Buildings contained in a letter dated April 13,1953 which stated in part as follows: “ Formerly the gas piping from the street up to and including the meters was installed by the gas companies. This practice has been discontinued in some parts of the City so that the owner must now provide such piping. In these locations the piping will be installed by plumbers and in order to establish the safety provisions for .such piping found necessary by experience, these proposed local laws have been prepared.” This letter, as well as the above-mentioned revisions, clearly indicates that the Commissioner of Buildings and the City lawmakers construed subdivision b of section C26-164.0 as having no application to installations made by public utilities.
Where the meaning of a statute is doubtful or obscure, the court must so construe it as to carry out the intention of the lawmakers (Matthews v. Matthews, 240 N. Y. 28). Acts in pari materia, passed before or after, may be referred to in order to ascertain such intention and the meaning of particular terms (Chase v. Lord, 77 N. Y. 1, 18). History of the period when statute was enacted may be considered (Woollcott v. Shubert, 217 N. Y. 212). It is presumed that the legislative body intends its enactments to accord with settled principles of public policy and not to violate them (Fullinwider v. Southern Pacific R. R. Co., 248 U. S. 409). When a statute may be interpreted in two ways, one of which works manifest inequitable results and the other just and reasonable results, the latter must prevail. A contrary construction would put the legislative body in the position of permitting, if not contemplating, the perpetration of a wrong (Peirce v. City of Bangor, 105 Me. 413). Practical construction put upon an ambiguous statute by administrative officers charged with its execution, and made the basis of their practice for a period of long duration and generally acquiesced in, is strong evidence of the meaning of the law (City of New York v. New York City Ry. Co., 193 N. Y. 543). Construction of a statute by the lawmaking body, by a subsequent act, is entitled to consideration where the statute’s meaning is doubtful (Yarlott v. Brown, 192 Ind. 648).
Sustaining plaintiffs’ construction as barring Brooklyn Union from installing gas .services within consumers’ premises unless it employs licensed plumbers would throw out of work 184 employees of Brooklyn Union engaged in installation services and would impose additional cost upon a consumer for a service now rendered free of charge. It is inconceivable that the Legislature intended a windfall for licensed plumbers, at the *1089 expense of the public and of utility workers whose competence and skill in installing gas services is equal, if not superior, to that of said plumbers.
Applying these rules of construction, I construe subdivision b of section C26-164.0 as having application only to piping work for which a plumber has been engaged, whether it be house or service piping, and as having no application to, and as not prohibiting, service installations made on consumers’ premises by a public utility. Such a construction harmonizes with and gives effect and meaning to the various provisions of the Code in pari materia. The section being thus construed, the complaint must fall. Moreover, the complaint is defective in another respect in that it contains no allegations showing direct injury to plaintiffs as a result of the defendants’ alleged wrongful acts (Prashker v. United States Guar. Co., 1 N Y 2d 584, 592; cf. St. Clair v. Yonkers Raceway, 13 N Y 2d 72).
Defendants also challenged plaintiffs’ right to maintain this action on the ground that they failed to exhaust adequate remedies available to them through proceedings before the Building Commissioner and Board of Standards and Appeals of the City and the Public Service Commission. This position is untenable. An interpretation of a statute presents only a question of law and in such a case direct application may be made to the court for relief, even though the aggrieved party does not first exhaust administrative remedies available to him (Kovarsky v. Brooklyn Union Gas Co., 279 N. Y. 304, 312-314; see, also, Woollard v. Schaffer Stores Co., 272 N. Y. 304, 311). Though the City did not cross-move therefor, the complaint nevertheless will be dismissed as to it as well (Leonard v. Hancock Mitt. Life Ins. Co., 118 N. Y. S. 2d 170, affd. 281 App. Div. 859).
Plaintiffs’ motion denied and cross motion for summary judgment granted.