James G. Sweeney, Esq. County Attorney, Orange County
Upon the direction of the Honorable Edward Weinfeld, United States District Judge for the Southern District of New York, who is presiding judge in the case entitled Merriweather v Sherwood, you have requested our opinion regarding the interpretation of section 500-c of the Correction Law. The parties to the lawsuit entered into a consent judgment providing for the upgrading of services and facilities at the Orange County Jail. Some doubt now exists as to the legality under section 500-c of a portion of the consent judgment. As a rule we do not issue opinions on questions in litigation. However, in this case a response is appropriate since both parties to the lawsuit at the request of the presiding judge have requested our opinion.
The part of the consent judgment in issue is a plan to use a large multi-purpose room at the jail as a mess hall for feeding inmates in a communal setting. Under the plan, fold-out tables would be installed enabling the room to accommodate approximately 130 inmates at a sitting. It is envisioned under the plan that inmates in custody on civil process or being held for civil trial, inmates under criminal sentence or being held for criminal trial, males and females, and young and old inmates in various combinations would be served their meals at a single sitting.
Section 500-c of the Correction Law classifies inmates for purposes of detention in county jails. Persons in custody on civil process, or committed for contempt, or detained as witnesses for civil trials are not to be put or kept in the same room with persons detained for trial or examination upon a criminal charge, or with convicts under sentence. Persons detained for trial or examination upon a criminal charge are not to be put or kept in the same room with convicts under sentence. Those under the age of twenty-one are not to be put or kept in the same room with prisoners twenty-one or older. Female inmates detained upon a criminal charge or under sentence are not to be kept in the same room with a man, and if detained in relation to a civil matter, are not to be put or kept in the same room with a man except with her husband in a room with no other prisoners.
The classification requirements of section 500-c result in three basic categories of imates, that is — serving sentence, under civil process or contempt, and under criminal process (trial or examination, material witness). In each category there are four subdivisions consisting of male adult, male minor, female adult, and female minor (New York Code of Rules and Regulations, Title 9, Executive, Part 7013, § 7013.1 [a]).
The classification requirements of section 500-c date from at least New York Revised Statutes of 1829 (Part IV, Ch III), were continued in chapter 460 of the Laws of 1847, were recodified as provisions of the County Law (L 1892, ch 686) and later were transferred to the Correction Law (L 1950, ch 695). We have found no direct evidence of the legislative intent behind section 500-c.
The concept of establishing classifications for the detention of persons in jails is not new. Nearly four hundred years before the birth of Christ, Plato advocated a sophisticated concept of classification (E. Eugene Miller, Jail Management [Lexington, Massachusetts, 1978] pp 47-48; Henry Burns, Jr., Corrections Organization And Administration [St. Paul, Minnesota, West Publishing Co., 1975] pp 363-364). The first formal classification of prisoners in the United States was implemented in 1790 at the Walnut Street Jail in Philadelphia (ibid.). It is generally agreed that the goal of classification is to separate inmates for both security and treatment purposes (E. Eugene Miller, supra, pp 52-53: Henry Burns, Jr., supra, pp 368-372; Louis J. Sirico, Jr., Prisoner Classification And Administrative Decisionmaking, Texas Law Review [Volume 50, 1972, No. 4] p 1229). Treatment is not, however, synonymous with classification, Classification is a method to make treatment more effective in an individual case (Henry Burns, Jr., supra,
pp 369-370).
Section 500-c provides that persons within one classification may not be "put or kept in the same room" with those of another class. This language seems to require segregation of inmate classes in housing and other prison facilities. The Legislature found it necessary to amend section 500-c to establish exceptions from the segregation requirements for participation in educational, vocational and divine worship programs (L 1970, ch 70 waived segregation requirements for these purposes except for females; L 1976, ch 24 removed the female exception). These later enactments are some evidence of legislative intent that section 500-c is applicable to housing and other prison facilities (cf. Jaffe Plumbing Co.v. Brooklyn Gas Co., 51 Misc.2d 1083 [Sup Ct, Kings Co, 1966] affd29 A.D.2d 1051 [2d Dept, 1968], 26 N.Y.2d 851 [1970]). We note also that the State Commission of Correction since 1977 has proposed legislation to amend section 500-c to limit the application of segregation requirements to housing assignments. Under the proposal, segregation would not be required during participation in any program or activity (introduced as Senate 8454 and Assembly 10093, 1980).
We note that the United States Constitution does not require the classification of prisoners for purposes of their confinement. Classification of inmates is a matter of prison administration and management with which Federal courts are reluctant to interfere except in extreme circumstances (Young v Wainwright, 449 F.2d 338 [5th Cir, 1971]). Classification may, however, be required as a means to enforce other constitutional rights. For example, the failure of a prison administrator to control prisoners who endanger the safety of other prisoners might amount to cruel and unusual punishment under theEighth
Amendment, thus requiring a judicially imposed classification system to safeguard constitutional rights (Jones v Diamond, 594 F.2d 997, 1015 [5th Cir, 1979]; McCray v Sullivan, 509 F.2d 1332, 1334 [5th Cir, 1975]; see also, Brenneman v Madigan, 343 F. Supp. 128 [ND Cal, 1972] — confinement of pretrial detainees).
In light of the history of prisoner classification, we believe that the classification requirements of section 500-c have the dual functions of facilitating treatment of prisoners and maintaining prison security. Through the segregation of classes of prisoners, security in housing and programs can be tailored to meet the escape and violence threats posed by the members of each class. Segregation of classes can also be used as a treatment tool to insulate the potentially harmful influence of a hardened criminal from, for example, a minor or a person being detained for trial, or a person being held in relation to a civil matter. Treatment technique can then be tailored to the needs of each class.
The taking of meals poses two major considerations, security and separation of classes of prisoners to prevent harmful influence. We believe that a determination of whether classes of prisoners under the consent judgment's dining plan have been "put or kept" in the same room in violation of the provisions of section 500-c is a question of fact. Depending on the physical characteristics of the mess hall, there may be options for separation of prisoner classes that will permit communal dining consistent with treatment and security goals and, therefore, in compliance with the apparent legislative intent of section 500-c. Some obvious possibilities are the use of movable partitions to separate classes, provision of separate avenues for ingress and egress, and prohibition of communication between classes; with the understanding that in each of these situations there would be stationing of security guards in sufficient numbers and locations to meet the threats posed by each prisoner class.
If the goals of section 500-c to segregate prisoner classes so as to facilitate treatment and to maintain prison security can be realized under your communal dining plan, we do not believe that prisoners of the different classes would be "put or kept" in the same room in violation of section 500-c. This is because the prisoners would be effectively segregated for purposes of the statute. In construing a statute, the intent of the Legislature is the primary consideration (Matter of Astmanv Kelly, 2 N.Y.2d 567, 572 [1957]; cf. New York State Bankers Assn. vAlbright, 38 N.Y.2d 430, 436-437 [1975]). "It is a familiar legal maxim that `he who considers merely the letter of an instrument goes but skin deep into its meaning, and all statutes are to be construed according to their meaning, not according to the letter'" (McKinney's Statutes, § 111).
Your letter discusses the concern of the correctional administrator of the Orange County jail that implementation of a communal dining plan in violation of section 500-c might subject him to possible prosecution for official misconduct under section 195 of the Penal Law. You have not asked and we do not consider whether the existence of a consent judgment incorporating the communal dining plan would be a defense to prosecution under section 195.
In conclusion, we believe that it is a question of fact based upon all the attendant circumstances as to whether a prison communal dining plan complies with section 500-c of the Correction Law.