Diane CUCCHI, Plaintiff,

v.

NEW YORK CITY OFF–TRACK BET-
TING CORPORATION, Hazel Dukes as
President of the New York City Off–
Track Betting Corporation, and Edward
Lewis as Chairman of the Board of Di-
rectors of the New York City Off–Track
Betting Corporation, Defendants.

No. 91 Civ. 5624 (KC).

United States District Court,
S.D. New York.

April 15, 1993.

John R. Olsen, Olsen & Brown, New York City, for plaintiff.

Hillary Weisman, Asst. Corp. Counsel, New York City, for defendants.

### ORDER

CONBOY, District Judge:

Plaintiff and defendants have both moved for partial summary judgment. For the reasons that follow, plaintiff's motion is denied, and defendant's motion is granted in part, and denied in part.[1]

## I. Breach of Contract

Plaintiff claims that defendants violated express and implied contracts of employment between plaintiff and defendants when defendants terminated plaintiff. We disagree.

■ "It is [well] settled law in New York that, absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at-will, terminable at any time by either party." *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919, 921 (1987). However, New York courts have recognized that in certain limited circumstances, when an employer has expressly agreed to limit its termination rights, the employer may no longer terminate the employee at-will. *Id.* 514 N.Y.S.2d at 212, 506 N.E.2d at 922; *see Weiner v. McGraw Hill, Inc.*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982). When ascertaining whether an employer has expressly agreed to limit its termination rights, courts must look at the totality of the circumstances. *See Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 852–53 (2d Cir. 1985).

In the case before us, the plaintiff asserts a number of bases for her claim that defendant's expressly limited their right to fire plaintiff at-will. First, plaintiff points to the OTB Corporate Policy and Procedures Manual ("OTB Manual"). Second, plaintiff points to OTB's Uniform Rules of Discipline. Third, plaintiff claims that certain statutes, rules, and regulations which, *inter alia*, limit the right of employers to fire their employees, have been incorporated into plaintiff's alleged employment contract. Fourth, plaintiff points to her employment application which states that OTB is an equal opportunity employer. Finally, plaintiff asserts that defendants induced plaintiff to leave her previous employment by making certain oral assurances to her.

---

1. Plaintiff contends that defendants have failed to submit to this Court a rule 3(g) statement in response to plaintiff's cross-motion. For the purposes of plaintiff's cross-motion, we will refer to defendants' 3(g) statement that defendants submitted with their motion for partial summary judgment.

As far as the OTB manual is concerned, the manual nowhere limits the right of OTB to fire an employee. Although the "Separation from Employment" chapter of the OTB manual lists four types of separation (resignation, discharge for cause, layoff and retirement), that language as a matter of law cannot be construed as excluding other grounds for termination because it does not expressly do so. *See Novinger v. Eden Park Health Services, Inc.,* 167 A.D.2d 590, 563 N.Y.S.2d 219, 220–21 (1990); *Marvin v. Kent Nursing Home,* 153 A.D.2d 553, 544 N.Y.S.2d 210, 211–12 (1989); *Gmora v. State Farm Mutual Automobile Insurance Co.,* 709 F.Supp. 337, 341 (E.D.N.Y.1989), *aff'd mem,* 888 F.2d 1376 (2d Cir.1989). Moreover, plaintiff admits that she did not rely on the OTB manual before being hired, *see* Plaintiff's Brief in Opposition to Defendants Motion for Partial Summary Judgment at 14, and this admission is fatal for her contractual claim based on the OTB manual. *See Novinger,* 563 N.Y.S.2d at 221.

Plaintiff's reliance on OTB's Uniform Rules of Discipline is also misplaced. Even assuming that the Uniform Rules of Discipline were applicable to plaintiff, the rules are, on their face, silent about any limitation on OTB's reasons for termination. However, citing the deposition testimony of former OTB President Howard Giordano, plaintiff asserts that a letter that Giordano inserted in the Uniform Rules of Discipline connotes that OTB employees can only be fired for cause. See Plaintiff's Memo Submitted with Exhibit 56 at 2. Even assuming that Giordano attempted to convey that message in the letter, we do not find that the letter stated with sufficient clarity and explicitness that OTB employees could only be terminated for cause. Therefore, we believe that that language, as a matter of law, cannot be construed as excluding other grounds for termination, *see Novinger v. Eden Park Health Services, Inc.,* 167 A.D.2d 590, 563 N.Y.S.2d 219, 220–21 (1990); *Marvin v. Kent Nursing Home,* 153 A.D.2d 553, 544 N.Y.S.2d 210, 211–12 (1989); *Gmora v. State Farm Mutual*

*Automobile Insurance Co.,* 709 F.Supp. 337, 341 (E.D.N.Y.1989), *aff'd mem,* 888 F.2d 1376 (2d Cir.1989), and we conclude that the Uniform Rules of Discipline were not an express limitation on the rights of the defendants to fire plaintiff at-will.

Third, plaintiff claims that because "a contract [is] deemed to include in its terms all rights conferred upon the parties by the laws of the state [where the contract was made]," *N.C. Feed Co. v. Board of Governors of the Federal Reserve System,* 473 F.2d 1210, 1215 (2d Cir.), *cert. denied,* 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973); *accord Doleman v. United States Trust Co.,* 2 N.Y.2d 110, 157 N.Y.S.2d 537, 542, 138 N.E.2d 784, 789 (1956), certain statutes, regulations, and rules, such as the New York Anti–Discrimination Laws, are incorporated into her purported employment contract. Apparently, plaintiff maintains that defendants' violation of those statutes is a basis for a breach of contract action against the defendants. We disagree. Plaintiff's reasoning is flawed because an at-will employment arrangement is not contractual and does not create an employment contract. *See Ingle v. Glamore Motor Sales, Inc.,* 73 N.Y.2d 183, 538 N.Y.S.2d 771, 774, 535 N.E.2d 1311 (1989) (stating that at-will employees discussed in two previous Court of Appeals Cases did not have a contractual arrangement with their employers); *Dickstein v. Del Laboratories, Inc.,* 145 A.D.2d 408, 535 N.Y.S.2d 92, 94 (1988) (implicitly holding that in employment at-will cases there exists no contract); 3A Corbin On Contracts § 674 at 124–25 (Supp.1992) ("A 'contract' terminable at-will by either party without further obligation or right flowing to either is repugnant to the term 'contract' itself, which carries with it implications of performance and duty, [and] expectations based on promises."). Since there existed no contract in which to incorporate the statutes, rules, and regulations cited by the plaintiff, her breach of contract claim based on these statutes, rules, and regulations must fail.[2] Moreover, even

---

2. *Wieder v. Skala,* 80 N.Y.2d 628, 593 N.Y.S.2d 752, 609 N.E.2d 105 (1992), which permitted a breach of contract action by an attorney who was an at-will employee and was fired for forcing his

law firm to report disciplinary violations of the attorney's fellow associate, is not to the contrary. In *Skala,* the New York Court of Appeals pointed out that "by insisting that plaintiff disregard DR

assuming that at-will employment is contractual, we have found no New York cases in which a terminated at-will employee sued its employer under a breach of contract theory based on violations of statutes, rules, and regulations by the employer.[3]

■ Plaintiff's assertion that the OTB by-laws limit the right of the defendants to terminate plaintiff is also meritless. The only written document that plaintiff appears to claim that she saw before accepting her job was the OTB'S Uniform Rules of Discipline. *See* Cucchi Aff. ¶ 26–¶ 33.[4] Plaintiff never alleges that she relied on the OTB by-laws before she decided to accept the Inspector General job with OTB, and plaintiff's failure to establish pre-hiring reliance on the by-laws is fatal to her contract claim based on the by-laws. *See Novinger v. Eden Park Health Services, Inc.*, 167 A.D.2d 590, 563 N.Y.S.2d 219, 221 (1990). Moreover, the only portion of the by-laws that arguably might apply to plaintiff, merely states that the executive staff are to be "appointed by the Board of Directors to serve at the will of the Board of Directors." Ex. A to Elaissen Aff., Art. (IV, § 2(D)). However, because the by-laws do not state explicitly that this is the exclusive way that executive staff can be fired, it cannot, as a matter of law, be read to preclude other methods of termination. *See Marvin v. Kent Nursing Home*, 153 A.D.2d 553, 544 N.Y.S.2d 210, 211 (1989).

■ Plaintiff also contends that because the top of the first page of her OTB employment application stated that OTB is an equal opportunity employer, plaintiff had a contractual right not to be fired because of her sex. We disagree. We do not believe that this statement is a sufficiently express limitation on defendants right to fire plaintiff so as to allow plaintiff to sue defendants under a breach of contract theory. Therefore, even if OTB did fire plaintiff for discriminatory reasons, that firing does not constitute a breach of contract.[5]

■ Plaintiff's final contract argument is that defendants orally assured her that only the OTB Board of Directors could fire plaintiff, that no retaliation would be taken against plaintiff for plaintiff's investigatory work, that no retaliation would be taken against her for reporting wrongdoing, that OTB was an equal opportunity employer with maternity leave benefits, that the OTB Uniform Rules of Discipline were mandatory and binding, and that plaintiff would not be considered management. Plaintiff asserts that she left her previous employment and came to work for OTB based on these oral assurances.

First of all, it is important to note that none of the alleged oral promises state that plaintiff could only be fired for cause. In-

---

1–103(A) defendants were not only making it impossible for plaintiff to fulfill his professional obligations but placing him in the position of having to choose between continued employment and his own potential suspension and disbarment." *Id.* 593 N.Y.S.2d at 756, 609 N.E.2d at 109. The Court noted that the only basis of the relationship between the plaintiff in *Skala* and the defendant was the practice of law, and that

> [i]ntrinsic to this relationship, of course, was the unstated but essential compact that in conducting the firm's legal practice both plaintiff and the firm would do so in compliance with the prevailing rules of conduct and ethical standards of the profession. Insisting that as an associate in their employ plaintiff must act unethically and in violation of one of the primary professional rules amounted to nothing less than a frustration of the only legitimate purpose of the employment relationship.

*Id.* In the case before us, no such pressure was placed on the plaintiff, and therefore no implied-in-law obligation was breached by the defendants when they fired plaintiff.

3. Of course, plaintiff may still be able to sue defendants under those statutes that create independents right of action.

4. Though Cucchi's deposition could be read to imply that Cucchi read the OTB manual before she accepted the job of Inspector general at OTB, *see* Cucchi Dep. at 14, later on in her deposition she states that she first saw the OTB manual "within a week or two of [her] taking the job." *See* Cucchi Dep. at 29. In addition, in Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, plaintiff concedes that she did not rely on the OTB manual before accepting the Inspector General job at OTB. *See* Plaintiff's memorandum in Opposition to Defendants' Motion for Summary Judgment at 14; Cucchi Aff. ¶ 48.

5. However, as noted previously, plaintiff may still be able to sue defendants under anti-discrimination statutes.

deed, none of these promises create an expectation of continued employment. Therefore, these promises did not alter plaintiff's at-will status.

■ Moreover, while an employer's oral assurances only to fire an employee for just cause are a significant factor a court must take into consideration in determining whether the employer intended alter the employee's at-will status, an employer's oral assurances that induce a person to work for the employer are not by themselves sufficient evidence of an express agreement to alter the employees at-will status. *See Paolucci v. Adult Retardates Center, Inc.*, 182 A.D.2d 681, 582 N.Y.S.2d 452, 453 (1992) (oral assurances made to the plaintiff were not sufficient "to limit the defendant's right to discharge the plaintiff at any time for any reason."); *Diskin v. Consolidated Edison Co. of New York, Inc.*, 135 A.D.2d 775, 522 N.Y.S.2d 888, 890 (1987) (oral assurances that the plaintiff could only be dismissed for cause were not sufficient to limit the defendant's right to terminate the plaintiff at will); *Kotick v. Desai*, 123 A.D.2d 744, 507 N.Y.S.2d 217, 219 (1986) ("allegation that the [employer] promised [the employee] a 'permanent position to last as long as the plaintiff was physically capable', is insufficient [to alter the employee's at-will status]"); *Hill v. Westchester Aeronautical Corp.*, 112 A.D.2d 977, 492 N.Y.S.2d 789, 791 (1985) ("plaintiff's bald assertion that defendants [ ] promised to not fire him except upon just cause, and that he relied on that promise, are insufficient to [alter plaintiff's at-will status.]"); *Gould v. Community Health Plan of Suffolk, Inc.*, 99 A.D.2d 479, 470 N.Y.S.2d 415, 417 (1984) ("Plaintiff's vague allegations about the nature of the optometry practice he surrendered in exchange for the position he accepted with CHPS, and his further allegations about being advised he could have the job as long as he wanted it, and that he would receive security from CHPS' personnel policies, are insufficient [evidence that defendants altered plaintiff's at-will status.]"); *Gross v. Goldome*, 1988 WL 90913, *3–*4 (W.D.N.Y.1988) (plaintiff who left previous employment on the basis of oral assurances by the defendant that plaintiff could be fired from his new job only for just cause did not

establish that plaintiff was anything other than an at-will employee); *See also Sabetay*, 514 N.Y.S.2d at 212, 506 N.E.2d at 922 (discussing *Weiner* and stating that "the express agreement between th[e] parties limiting the [*Weiner*] employer's otherwise unfettered right to terminate its employees" consisted of "the language in the [employer's] handbook, coupled with the reference to the handbook in the employment application;" The oral assurance the employer made to the employee was not the express agreement relied on by the Court but was only one of four significant factors supporting the employee's breach of contract claim.).

We do not believe that the Second Circuit's decision in *Ohanian v. Avis Rent A Car System, Inc.*, 779 F.2d 101 (2d Cir.1985) mandates a different result. In *Avis*, the plaintiff's only evidence that the defendant expressly promised to fire him only for just cause, was evidence of the defendant's oral assurances to the plaintiff that the plaintiff's employment with the company was secure "unless [the plaintiff] screwed up badly." *Id.* at 104, 109. These assurances induced the plaintiff to relocate to become the head of the defendant's Northeast region. The Second Circuit held that the evidence of the oral assurances was a sufficient basis for the jury's determination that the defendant had explicitly limited its right to terminate the plaintiff at will, and that the defendant could only fire the plaintiff for cause. *Id; see also Sivel v. Readers Digest, Inc.*, 677 F.Supp. 183, 186–87 (S.D.N.Y.1988) (citing *Avis* and holding that evidence that the plaintiff relied on the defendant's oral assurances that the defendant could terminate the plaintiff only if the plaintiff made a serious mistake, was sufficient to alter the plaintiff's at-will status).

We believe that the Second Circuit's holding in *Avis* is distinguishable from the present case. First of all, the defendant in *Avis* essentially orally promised the plaintiff that the defendant would fire the plaintiff only for just cause. However, as noted above, none of defendants' oral promises to plaintiff in the case before us guaranteed plaintiff that she could only be fired for just cause. *See, supra.*

Moreover, we believe that the Second Circuit's holding in *Avis* has been undercut by the subsequent New York Court of Appeal's decision in *Sabetay*. As we noted above, the New York Court of Appeals in *Sabetay* discussed its prior holding in *Weiner*. The *Sabetay* Court stated that the express agreement that altered the plaintiff's at-will status in *Weiner* was an employee handbook, and that the oral assurance of for-cause status was but one of four significant factors supporting the employee's breach of contract claim. Therefore, we are of the opinion that after *Sabetay*, oral assurances alone are not enough to alter an employee's at-will status.

Furthermore, even if the New York Court of Appeals had not decided *Sabetay*, we might be inclined to believe that the Second Circuit's decision in *Avis* is inapposite to the case before us. It is well settled in this Circuit "that the decision of an intermediate state court on a question of state law is binding on us unless we find persuasive evidence that the highest state court would reach a different conclusion." *Entron, Inc. v. Affiliated FM Insurance Co.*, 749 F.2d 127, 132 (2d Cir.1984); *accord Deeper Life Christian Fellowship, Inc. v. Sobol*, 948 F.2d 79, 84 (2d Cir.1991). All of the Appellate Division cases, that our research has uncovered and that were decided after the *Avis* decision, hold that oral assurances that an employer will only terminate an employee for cause are not a sufficient basis for finding that the employer has expressly agreed to limit its right to fire an employee at will. *See Paolucci v. Adult Retardates Center, Inc.*, 182 A.D.2d 681, 582 N.Y.S.2d 452, 453 (1992); *Diskin v. Consolidated Edison Co. of New York, Inc.*, 135 A.D.2d 775, 522 N.Y.S.2d 888, 890 (1987); *Kotick v. Desai*, 123 A.D.2d 744, 507 N.Y.S.2d 217, 219 (1986). Given the evolution of New York case law since the *Avis* decision, we believe that the New York Court of Appeals would now hold that an employer's oral assurances about termination that induce a person to become an employee of that employer, are not a sufficient basis for a jury to conclude that the employer expressly agreed to limit his right to fire the employee at will. Therefore, plaintiff's breach of contract claim based on these oral assurances must fail.[6]

In sum, we conclude that plaintiff was an at-will employee, and we therefore grant defendants' motion for summary judgment on plaintiff's contract claims.[7]

## II. Due Process Claims

### a. Property Interest

The Second Circuit has made clear that "[i]n the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship *without cause.*" *S & D Maintenance Co. v. Goldin*, 844 F.2d 962, 967 (2d Cir.1988). In the instant case, none of the statutes cited by plaintiff bar defendant from terminating defendant without cause. Moreover, as we have determined, defendant was not contractually bound to fire plaintiff only for cause. Therefore, plaintiff's contention that defendants deprived plaintiff of her "property" without due process of law when defendants fired plaintiff is meritless. *See Bishop v. Wood*, 426 U.S. 341, 342–47, 96 S.Ct. 2074, 2076–79, 48 L.Ed.2d 684 (1976) (an at-will government employee has no property interest in his or her job); *Angrisani v. City of New York*, 639 F.Supp. 1326,

---

6. We do not believe that even when considered along with the "equal opportunity employment" statement on plaintiff's employment application, defendants' oral assurance that defendant was an equal opportunity employer is sufficient to limit defendants' right to fire plaintiff at will.

7. *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195 (2d Cir.1989) does not require a different result. *Leonelli* involved the right of a discharged at-will employee to recover benefits his employers promised him, while the instant case involves the right of the defendants to fire the plaintiff. Nowhere in *Leonelli* did the Second Circuit suggest that the employer's promise of benefits to the employee interfered with the right of the employer to fire its employee at-will. Indeed, the Second Circuit summarized its holding by stating that *"[a]lthough an employer has an unquestioned right to discharge [an at will employee]*, it still must take special pains not to act in such a way as to cause its employee to lose those benefits to which he may otherwise have been entitled." *Id.* at 1196 (emphasis added). Therefore, we do not believe that the holding of *Leonelli* is applicable in this case.

1332–33 (E.D.N.Y.1986) (same); *Bykofsky v. Hess*, 107 A.D.2d 779, 484 N.Y.S.2d 839, 842 (same, discussing the Federal and New York Constitutions), *aff'd*, 65 N.Y.2d 730, 492 N.Y.S.2d 29, 481 N.E.2d 569, *cert. denied*, 474 U.S. 995, 106 S.Ct. 408, 88 L.Ed.2d 358 (1985).[8]

▌ Plaintiff further contends that defendants deprived plaintiff of property without due process of law because the defendants did not follow their own procedural regulations when they fired plaintiff.[9] Even assuming that defendants failed to follow there own procedures when they fired plaintiff, plaintiff's due process claim based on that failure is without merit. "[T]he mere fact that [OTB] has promulgated procedural rules by which to make retention decisions does not by itself create a constitutionally cognizable property interest in continued employment in [OTB]." *Navas v. Gonzalez Vales*, 752 F.2d 765, 768 (1st Cir.1985). "A regulation creates a property interest in a job only if it explicitly or implicitly gives rise to an entitlement to continued employment." *Id.* In the instant case, none of the alleged procedures which plaintiff claims that the defendants violated "explicitly or implicitly gives rise to an entitlement to continued employment." *Id.* Therefore, plaintiff's due process claim based on defendants' alleged violation of its procedural rules must fail.

Citing *Vitarelli v. Seaton*, 359 U.S. 535, 540, 79 S.Ct. 968, 973, 3 L.Ed.2d 1012 (1959), plaintiff contends that if a government agency promulgates procedures, and then fires an employee without following those procedures, the agency has taken the employee's property without due process of law. We disagree.

The Supreme Court has made clear that its holdings in cases similar to *Vitarelli* merely "enunciate principles of federal administrative law rather than of constitutional law binding upon the States." *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78, 92 n. 8, 98 S.Ct. 948, 956 n. 8, 55 L.Ed.2d 124 (1978). Indeed, courts since *Horowitz* have held that nonfederal agencies that promulgate procedures which do not create a right to continued employment, cannot be sued for violating due process when they fire an employee in violation of these procedures. *See Weinstein v. University of Illinois*, 811 F.2d 1091, 1097 (7th Cir.1987); *Hogue v. Clinton*, 791 F.2d 1318, 1324 (8th Cir.), *cert. denied*, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 704 (1986); *Navas*, 752 F.2d at 768; *see also Lieberman v. Gant*, 474 F.Supp. 848, 858–59 (D.Conn.1979) (Public university that failed to follow its own procedures when it denied a professor tenure did not violate due process because of that failure), *aff'd*, 630 F.2d 60 (2d Cir.1980). Thus, even assuming that defendants failed to follow their own procedures when they fired plaintiff, this failure did not deprive plaintiff of property without due process of law.[10]

In sum, defendants' motion for summary judgment on plaintiff's property interest claim is granted, and plaintiff's cross motion on this issue is denied.

### b. Liberty Interest

▌ Plaintiff contends that defendants deprived her of her liberty interest in her reputation when defendants fired her.

---

8. We note that at his deposition, Howard Giordano, a former OTB president, testified that the only permissible basis for employment termination was for cause, i.e., misconduct. *See* Deposition of Howard Giordano at 107–08. However, even assuming that in practice OTB only fired its employees for cause, plaintiff has failed to establish that she was contractually entitled to the continuation of this policy. Thus, plaintiff's reliance on this policy to create a property interest in her job must fail.

9. For example, plaintiff complains that defendants violated OTB procedures because plaintiff was not permitted to appeal her termination.

10. We have found no cases in which New York courts specifically have held that the New York State constitution's due process clause mandates state or city agency's to follow their own procedures when they fire their employees. However, the New York Court of Appeals seems to have indicated that as far as liberty and property interests are concerned, New York will follow the federal rule. *See generally Economico v. Village of Pelham*, 50 N.Y.2d 120, 428 N.Y.S.2d 213, 405 N.E.2d 694 (1980) (discussing liberty and property interests under the federal and New York State constitutions). Therefore, we hold that the due process clause of the New York State constitution does not require state or city agency's to follow their own procedures when they fire their employees.

"A government employee's liberty interest is implicated where the government dismisses him [or her] based on charges 'that might seriously damage his [or her] standing and associations in his [or her] community' or that might impose 'on him [or her] a stigma or other disability that foreclose[s] his [or her] freedom to take advantage of other employment opportunities.'" *Brandt v. Board of Cooperative Educational Services*, 820 F.2d 41, 43 (2d Cir.1987) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972) ). In *Roth*, the Supreme Court made clear that the stigma necessary to implicate a liberty interest must be "something more than the inevitable disadvantage when a person 'simply is not rehired in one job but remains as free as before to seek another.'" *Capers v. Long Island Railroad*, 429 F.Supp. 1359, 1368 (S.D.N.Y.) (quoting *Roth*, 408 U.S. at 575, 92 S.Ct. at 2708), *aff'd sub nom.*, *Harris v. Long Island Railroad*, 573 F.2d 1291 (2d Cir.1977). "Mere proof ... that [a terminated employee's] record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.'" *Roth* 408 U.S. at 574 n. 13, 92 S.Ct. at 270 n. 13.

In the case before us, the record is uncontradicted that when defendants fired plaintiff, they did not tell her that she was being fired as a result of misconduct or any wrongdoing on her part. *See* Cucchi Dep. at 82, 134. Moreover, plaintiff has not alleged that defendants ever asserted at any other time that they fired plaintiff because of misconduct or wrongdoing on her part. The only reason defendants ever gave plaintiff for plaintiff's discharge was "ongoing changes within OTB." Ex. A. to DeLeon Aff., Letter from Edward Lewis to Plaintiff.

Plaintiff contends that OTB employees were responsible for reporting to the New York Post stigmatizing information that became the basis of an October 15, 1990 New York Post article. However, plaintiff's reliance on this article as a foundation for her liberty interest claim is misplaced. We find nothing in the article to be stigmatizing, let alone stigmatizing enough to implicate plaintiff's liberty interest in her reputation. None of plaintiff's other assertions of stigmatization have merit.

Because plaintiff has presented no evidence of stigmatization, other than the consequence that results from simply being fired, defendant's motion for summary judgment on plaintiff's liberty interest claim is granted, and plaintiff's cross-motion on this issue is denied.[11]

### III. Plaintiff's Right to Privacy

Plaintiff claims that because the October 15, 1990 New York Post article reported that plaintiff was home on maternity leave when she was fired, and because OTB employees were responsible for the article, defendants violated her right to privacy. We disagree. One of the factors that a court must consider when determining whether the publication of certain information about a person violates that person's right to privacy is the nature of the information divulged. *See Soucie v. County of Monroe*, 736 F.Supp. 33, 36 (W.D.N.Y.1990). Indeed, the Supreme Court's seminal opinion in this area seems to indicate that the information must be "personal in character and embarrassing or harmful if disclosed" in order to implicate the constitutional right to privacy. *See Whalen v. Roe*, 429 U.S. 589, 605, 97 S.Ct. 869, 879, 51 L.Ed.2d 64 (1977). We do not believe that plaintiff's pregnancy status was sufficiently "personal in character and embarrassing or harmful if disclosed" such that its publication

11. We have found no cases in which New York courts have held that the New York State constitution provides greater safeguards than does the federal constitution to protect a person's liberty interest in his or her reputation. However, as we noted above, the New York Court of Appeals seems to have indicated that as far as liberty and property interests are concerned, New York will follow the federal rule. *See generally Economico*

*v. Village of Pelham*, 50 N.Y.2d 120, 428 N.Y.S.2d 213, 405 N.E.2d 694 (1980) (discussing liberty and property interests under the federal and New York State constitutions). Therefore, we hold that the due process clause of the New York State constitution does not provide greater safeguards than does the federal constitution to protect a person's liberty interest in his or her reputation.

violated plaintiff's privacy rights. Accordingly, plaintiff's privacy argument must fail.

### IV. New York Civil Service Law 75–b

Cucchi claims that defendants violated New York State Civil Service Law 75–b ("the Whistleblower Statute") when they fired her in retaliation for her reporting suspected wrongdoing by Hazel Dukes to the Department of Investigation and to the Inspector General of the Human Resources Administration.

■■■ Defendants contend that the Whistleblower Statute only protects public employees who report misconduct that has actually taken place. Defendants assert that because no misconduct occurred in this case, plaintiff is not protected under the Whistleblower Statute. We disagree. We believe that even assuming that no misconduct took place in this case, plaintiff may still fall under the Whistleblower Statute's protections.

The New York Legislature passed the Whistleblower Statute to, *inter alia,* "mak[e] it easier for an employee to report *suspected* abuse." *Hanley v. New York State Executive Dept. Division for Youth,* 182 A.D.2d 317, 589 N.Y.S.2d 366, 368 (1992) (emphasis added). Indeed, in Governor Cuomo's Approval Memorandum about the Whistleblower Statute, he made clear that "the employee need not be right that a violation has in fact occurred but is protected if the employee reasonably believed that a violation had occurred." McKinney's 1986 Session Laws of New York at 3215; *see* Whistleblower Statute § 75–b(2)(a)(ii). Thus, the question in this case becomes, was it reasonable for the plaintiff to believe that Ms. Dukes committed an act which constituted "improper governmental action" within the meaning of the Whistleblower Statute? Given the factual record in this case, and reading the record in the light most favorable to the plaintiff, we cannot conclude that it was unreasonable for Cucchi to report her suspicions about Ms.

Dukes to the Department of Investigation and the Inspector General of the Human Resources administration. Therefore, defendants motion for summary judgment on plaintiff's Whistleblower claim is denied.[12]

### V. Intentional and Negligent Infliction of Emotional Distress

■■■ Plaintiff's tenth claim for relief alleges that OTB "has intentionally and negligently inflicted emotional distress upon plaintiff." A cause of action for negligent infliction of emotional distress arises only in unique circumstances, when a defendant owes a special duty only to plaintiff, *see Kelly v. Chase Manhattan Bank,* 717 F.Supp. 227, 235 (S.D.N.Y.1989), or where there is proof of a traumatic event that caused the plaintiff to fear for her own safety. *See Ford v. Village Imports, Ltd.,* 92 A.D.2d 717, 461 N.Y.S.2d 108, 108 (1983). The termination of an employee does not give rise to a claim for negligent infliction of emotional distress because a corporation owes the same duties to all employees. *Kelly,* 717 F.Supp. at 235. In the instant case, plaintiff maintains that there existed a special relationship between the plaintiff and the defendant because plaintiff was home on maternity leave when she was fired. However, that relationship is not unique to plaintiff as maternity leave is apparently available to other OTB employees. Therefore, we find plaintiff's argument with respect to a special relationship with OTB to be meritless.

In sum, reading the record in light most favorable to the plaintiff, we conclude that she has failed under New York Law to satisfy the requirements of a negligent infliction of emotional distress claim. Accordingly, defendants' motion for summary judgment on plaintiff's negligent infliction of emotional distress claim is granted.

---

12. Cucchi claims that the defendants violated her free speech rights when they fired her in retaliation for her reporting suspected wrongdoing to the Department of Investigation and the Inspector General of the Human Resources Administration. While plaintiff's claim may state a cause of action, *see Vasbinder v. Ambach,* 926 F.2d 1333, 1339–40 (2d Cir.1991); *Rookard v. Health & Hospitals Corp.,* 710 F.2d 41, 46–47 (2d Cir.1983), it is not the subject of defendants' summary judgement motion. Accordingly, we will not address further in this opinion plaintiff's free speech argument.

■ Plaintiff's intentional infliction of emotional distress claim also fails to withstand defendants' motion for summary judgment. To satisfy the standard for intentional infliction of emotional distress, a plaintiff must describe conduct " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Murphy v. American Home Prod. Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86 (1983) (quoting Rest. Second Torts § 46(1), comment d. The plaintiff in *Murphy* alleged that he was fired because of his age and because he had reported management improprieties. "[W]hen he returned the next day for his belongings, he was placed under guard, barred from saying goodbye to his colleagues, told that his belongings had been taken from his desk (allegedly by breaking the lock) and publicly escorted out of the building; two weeks later, when he came as directed, to collect his possessions, he was summarily ordered out of the building, and his possessions dumped on the street beside him." 112 Misc.2d 507, 447 N.Y.S.2d 218, 219 (opinion below). Despite these facts, the Court of Appeals held that the plaintiff did not state a claim for intentional infliction of emotional distress.

In the case before us, plaintiff's allegations of outrageous behavior amount to the following: 1) she was fired soon after having a child; 2) that an article about her intention to sue OTB appeared in a newspaper; and 3) that she was fired for retaliatory and discriminatory reasons in violation of various state and federal laws. Even assuming all of these allegations are true, they do not begin to approach the strict standard of outrageous behavior that is needed to prove an intentional infliction of emotional distress claim under New York law. *See Murphy, supra; Hoheb v. Pathology Associates*, 146 A.D.2d 919, 536 N.Y.S.2d 894, 896 (1989); *Martin v. Citibank*, 762 F.2d 212, 220 (2d Cir.1985). Accordingly, defendants' motion for summary judgment on plaintiff's intentional infliction of emotional distress claim is granted.

## VI. Defamation

Plaintiff has indicated that she does not oppose defendants' motion for summary judgment on her defamation claim. *See* Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss at 2. Accordingly, defendants' motion for summary judgment on this claim is granted.

## VII. Ultra Vires Claim

■ In her twelfth claim for relief, plaintiff asserts that defendants acted ultra vires when they terminated plaintiff's employment without official board of directors' action. Plaintiff claims that by firing plaintiff without Board action, defendants violated "the statutes of the State of New York relating to corporations." [13] In her brief in opposition to defendants' motion for partial summary judgment, plaintiff denominates her twelfth claim as one for promissory estoppel. Whether plaintiff's twelfth cause of action is making an ultra vires claim or a promissory estoppel claim, defendants' motion for summary judgment on plaintiff's twelfth claim for relief must be granted.

Plaintiff has not stated in her complaint or in her briefs the New York Statutes upon which she is relying for her ultra vires claim. The most relevant New York statute seems to be N.Y. Bus. Corp. Law § 203 (McKinney 1986). However, any reliance on this statute by plaintiff must fail because the statute only permits a right of action by a shareholder of a corporation, "by or in the right of the corporation to procure a judgment in its favor against an incumbent or former officer director of the corporation for loss or damage due to his unauthorized act," and by the attorney-general. *Id.*[14] Because plaintiff is not a shareholder of OTB, is not suing on

**13.** In her twelfth claim for relief, plaintiff once again charges that defendants are guilty of breach of contract. That charge is meritless, as discussed supra.

**14.** *See also* N.Y. Banking law § 9-a (McKinney 1990) (discussing the ultra vires defense in the banking context); N.Y. Not-For-Profit Corporation Law § 203 (McKinney 1970) (discussing the defense of ultra-vires in the not-for-profit corporation context).

behalf of OTB, and is not the attorney-general, plaintiff's ultra vires claim must fail. *See Jaffe Plumbing & Heating Co. v. Brooklyn Union Gas Co.,* 51 Misc.2d 1083, 275 N.Y.S.2d 24, 28 (1966), *aff'd,* 29 A.D.2d 1051, 1052, 290 N.Y.S.2d 1022 (1968), *aff'd,* 26 N.Y.2d 851, 309 N.Y.S.2d 597, 258 N.E.2d 93 (1970); *711 Kings Highway Corp. v. F.I.M.'s Marine Repair Service, Inc.,* 51 Misc.2d 373, 273 N.Y.S.2d 299, 300–01 (1966).

Plaintiff asserts that she left her previous job and joined OTB in reliance upon Sarah Jo Hamilton's promise that plaintiff could only be fired by the OTB Board of Directors.[15] Plaintiff therefore contends that OTB is promisorily estopped from firing plaintiff in a manner that violates Sarah Jo Hamilton's promise. We disagree.

First of all, plaintiff never raised a promissory estoppel claim in her complaint. For this reason alone, defendants' motion for summary judgment on this claim should be granted.

Moreover, under New York law, "the doctrine of promissory estoppel is properly reserved for that limited class of cases where 'the circumstances are such as to render it *unconscionable* to deny' the promise upon which the plaintiff has relied." *Philo Smith & Co. v. Uslife Corp.,* 554 F.2d 34, 36 (2d Cir.1977) (quoting 3 Williston on Contracts § 533A, at 801 (3d ed. 1960) (emphasis added in the *Philo* opinion). "[I]t has been consistently held that a change of job or residence, by itself, is not sufficient to trigger invocation of the promissory estoppel doctrine." *Cunnison v. Richardson Greenshields Secu-*

*rities, Inc.,* 107 A.D.2d 50, 485 N.Y.S.2d 272, 275 (1985); *accord Ginsberg v. Fairfield–Noble Corp.,* 81 A.D.2d 318, 440 N.Y.S.2d 222, 225 (1981). Moreover, "[t]he choice to forego current employment because of rosy promises" does not render the circumstances so unconscionable that the plaintiff may assert promissory estoppel. *Ginsberg,* 440 N.Y.S.2d at 225. Therefore, plaintiff's mere assertion that she left her previous job in reliance on Sarah Jo Hamilton's promise that plaintiff could only be fired by the Board of Director's, is insufficient to allow plaintiff to utilize promissory estoppel. Accordingly, defendants' motion for summary judgment on plaintiff's promissory estoppel claim is granted.

### Conclusion

Defendants' motion for summary judgment on plaintiff's contract claim, due process claim, privacy claim, defamation claim, intentional and negligent infliction of emotional distress claims, ultra vires claim, and promissory estoppel claim is granted. Defendants' motion for summary judgment on plaintiff's Whistleblower Statute claim is denied. Plaintiff's cross motion for partial summary judgment is denied in its entirety.[16]

SO ORDERED.

---

15. Sarah Jo Hamilton was OTB's General Counsel at the time OTB hired plaintiff.

16. Citing *Austin v. Board of Higher Education,* 5 N.Y.2d 430, 186 N.Y.S.2d 1, 158 N.E.2d 681 (1959), defendants contend, in an April 9, 1993 letter, that all of the plaintiff's state law claims must be dismissed. Specifically, defendants assert that because the exclusive remedy for plaintiff's wrongful termination claim was an Article 78 proceeding, and because plaintiff did not seek redress by means of Article 78, all of plaintiff's state law claims must be dismissed. To support their position, defendants point to Judge Miriam Cederbaum's oral decision from the bench in *Katz v. New York City Off–Track Betting Corp., et al.,* 91 Civ. 8027(MGC), in which she dismissed various state law claims under the authority of *Austin.*

Defendants' current motion for summary judgment only addresses some of the state law claims that plaintiff asserted in her complaint. Therefore, we will deem defendants' April 9, 1993 letter as only addressing those claims.

In our decision detailed above, the only portion of defendants' summary judgment motion we denied was the portion that dealt with plaintiff's whistleblower claim. Because the New York State Legislature has created a special statutory scheme under which public employees can bring a cause of action when they believe that they are being fired for whistleblowing, we do not believe that Article 78 is the exclusive remedy for a discharged public employee in whistleblower cases. Accordingly, we do not believe that *Austin* is apposite to this case.

We observe that in her decision, Judge Cederbaum did not address the question of whether a

whistleblower claim of a public employee could be dismissed under the reasoning of *Austin*.