Giles A. **WANAMAKER**, Plaintiff,

v.

**COLUMBIAN ROPE COMPANY,**
et al., Defendants.

No. 88–CV–1135.

United States District Court,
N.D. New York.

Oct. 30, 1995.

Giles A. Wanamaker, Skaneateles, NY, Pro Se.

Hancock & Estabrook, Syracuse, NY (David E. Peebles, of counsel), for Defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, Senior District Judge.

### BACKGROUND

Familiarity with the court's prior two written decisions in this case is presumed.[1] Thus, departing from its usual format, rather than setting forth the pertinent facts at the outset, the court will immediately proceed to a brief discussion of the motions currently pending before it. Then, in analyzing the parties' respective arguments, the court will set forth only those facts necessary to a resolution of the relatively narrow issues before it on these motions.

In the years since *Wanamaker II,* the parties have engaged in extensive and exhaustive discovery, culminating in the motions which are presently before the court. More specifically, on December 13, 1994, the court heard oral argument with respect to the summary judgment motion by the defendants, Columbian, as well as the individual defendants. The court also heard oral argument regarding plaintiff Wanamaker's motion for reconsideration pursuant to Fed. R.Civ.P. 60(b)(6). In his motion plaintiff seeks reconsideration of that portion of *Wa-*

---

1. In May, 1989, the court issued a decision with respect to a host of motions to dismiss by the defendants. *See Wanamaker v. Columbian Rope Co.,* 713 F.Supp. 533, 547 (N.D.N.Y.1989) (*"Wanamaker I"*). Slightly more than a year later the parties were again before the court on defense motions, requiring the court to make a number of rulings which are recited in *Wanamaker v. Columbian Rope Co.,* 740 F.Supp. 127, 142 (N.D.N.Y.1990) (*"Wanamaker II"*). After *Wanamaker II,* the following claims remain in this case: (1) willful age discrimination under the ADEA and the New York Human Rights Law ("HRL"), arising out of the abolition of plaintiff's position as in-house counsel; (2) retaliation claims under both of those statutes based upon plaintiff's removal as in-house counsel in March, 1987; and (3) breach of contract based upon the theory that in 1974 plaintiff was verbally promised employment for the balance of his career until he chose to retire from the defendant corporation, Columbian Rope Company ("Columbian").

*namaker I* wherein the court dismissed as untimely his claims of non-willful ADEA violations. Following oral argument, the court reserved decision and directed the defendants to order a copy of the transcript of oral argument and to provide the same to the court. On March 17, 1995, the transcript was filed with the court. After carefully reviewing the voluminous submissions made in connection with these motions, as well as the relevant case law, the court is now in a position to render its decision. (Even though Columbian's summary judgment motion was filed first, the court will address plaintiff's reconsideration motion at the outset because it can be more quickly resolved than the summary judgment motion.)

### DISCUSSION

### I. Reconsideration

In *Wanamaker I* this court held, *inter alia,* that plaintiff's claims based upon non-willful violations of the ADEA were time barred because the statutorily required filing fee was not paid until November 1, 1988— after the two-year statute of limitations had run. 713 F.Supp. at 538–39. Plaintiff asserts that reconsideration of that holding is mandated for three reasons. First, he contends that that part of the Civil Rights Act of 1991 which eliminated the two year statute of limitations for nonwillful ADEA claims should be applied retroactively. Second, plaintiff asserts that this court should reconsider its prior decision as to the nonwillful ADEA claims because his lawyer at the time not only failed to timely remit the filing fee, but, to compound that, he also failed to timely submit an attorney's affidavit which purportedly would have stated that the summons and complaint were not returned to that attorney by the clerk's office, as defense counsel declared.[2] If all else fails, on his third argument plaintiff resorts to notions of "fairness," asserting that it was not "fair" for the court to treat the Local Rule requiring

advance payment to the clerk's office as jurisdictional in nature. *See* Plaintiff's Memorandum in Support of his Motion for Reconsideration at I.

Columbian's response is three-fold: (1) this reconsideration motion is not timely; (2) "[p]laintiff has not demonstrated any justification for this court to abandon its prior decision concerning when filing of plaintiff's complaint . occurred, for limitations purposes[;]" and (3) "[t]he Civil Rights Act of 1991 cannot be applied retroactively to revive plaintiff's claims of intentional discrimination under the ADEA[.]" Memorandum in Opposition to Plaintiff's Motion for Reconsideration at 6 and 13. Before addressing any of these arguments, the court must consider whether plaintiff has properly relied upon Rule 60(b) in making this motion—an issue Columbian overlooks.

### A. Finality Requirement

Rule 60(b)(6) provides, in relevant part, for relief from "a final judgment, order, or proceeding" for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). Relying upon that Rule, plaintiff asserts that the court should reconsider its prior determination that his claims of nonwillful ADEA violations are time-barred. As the language of Rule 60(b)(6) plainly states, however, it affords relief only from a **"final** judgment, order or proceeding." *Id.* (emphasis added). The Advisory Committee explicitly stated in connection with the 1946 Amendment to that Rule that, "The addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are **not** brought within the restrictions of the rule[.]" Fed.R.Civ.P. 60 advisory committee note (emphasis added).

■ This court's decision in *Wanamaker I,* dismissing some but not all of the defen-

---

2. The court in *Wanamaker I* observed that its determination that plaintiff's complaint was not filed until November 1, 1988, when the filing fee was paid to the clerk, was "consistent with this Circuit's definition of filing because ... the summons and complaint were not delivered into the 'actual custody' of the clerk on October 28, 1988,

in that they were returned on that same date for failure to comply with the filing fee requirement." 713 F.Supp. at 539 (citing [Defense Counsel's] Reply Affidavit (4/4/189), Ex. A thereto). (The referenced reply affidavit with attached exhibit is docket entry number eight.)

dants, and dismissing some but not all of plaintiff's claims, was interlocutory and thus not "final" for purposes of Rule 60(b). *See James By James v. Sadler*, 909 F.2d 834, 836 (5th Cir.1990) (dismissal order was interlocutory where some defendants remained as parties to the action); *Wagner v. Rush–Presbyterian–St. Luke's Medical Center*, 1987 WL 11349 *1 1987 U.S.Dist. LEXIS 4206, at *2 (N.D.Ill. May 18, 1987) (interlocutory decision dismissing plaintiff's sex discrimination claims only not within the province of Rule 60(b)); *Peterson v. Department of Pub. Welfare*, No. 83–714 (E.D.Pa. June 4, 1985) (order dismissing plaintiff's Pennsylvania Human Relations Act claims, but allowing other claims to stand, was interlocutory and thus not final for Rule 60(b) purposes). Thus, plaintiff's reconsideration motion does not come within the ambit of Rule 60(b).

### B. *"As Justice Requires"*

■ Even though plaintiff cannot rely upon Rule 60(b) as a basis for this reconsideration motion, he is not completely foreclosed from seeking such relief. It is within the plenary power of the court "to review its interlocutory orders 'to afford such relief from them as justice requires,' and this power is not affected by Rule 60(b)." *Krome v. Merrill Lynch & Co., Inc.*, 110 F.R.D. 693, 694–95 (S.D.N.Y.1986) (and cases cited therein) ("[R]ule [60(b) ] does not affect the court's inherent power to grant relief from interlocutory judgments or orders."); *see also Golub v. Kidder, Peabody & Co., Inc.*, 1991 WL 233259 *1 1991 U.S.Dist. LEXIS 15559, at *2 (S.D.N.Y. Oct. 21, 1991) (same); *Seymour v. Bache & Company, Inc.*, No. 75 Civ. 3722, Fed.Sec.L.Rep. (CCH) ¶ 98,818 (S.D.N.Y. Sept. 28, 1982) (quoting 7 J. Moore & J. Lucas, Moore's Federal Practice, ¶ 60.20 at 242 (2d ed. 1982)) (same).[3] Consequently, even though plaintiff improperly relies upon Rule 60(b)(6) as the basis for this reconsideration motion, if "justice so requires," it is nonetheless within this court's plenary power to review that part of *Wanamaker I* to which

plaintiff now objects. The court cannot arrive at that step in its analysis, however, because this reconsideration motion is untimely, although not necessarily for the reasons suggested by Columbian.

### 1. *Timeliness*

■ Local Rule 7.1(g) provides, in relevant part: "Motions for reconsideration ..., **unless otherwise governed by Fed.R.Civ.P. 60, shall** be served not later than ten (10) days after the entry of the challenged judgment, order, or decree." Local Rule 7.1(g) (emphasis added). Even though plaintiff did not rely upon that Local Rule in making this motion, because, as already discussed, his motion is not "otherwise governed by [Rule] 60," he was required to bring such motion within ten days of *Wanamaker I*; and clearly he did not do that. *See Burke v. Warren County Sheriff's Dept.*, 890 F.Supp. 133, 140 (N.D.N.Y.1995) (reconsideration motion brought more than five months after challenged decision untimely under Local Rule 7.1(g)). Thus because plaintiff's motion was not timely brought, the court declines to reconsider that portion of *Wanamaker I* holding that plaintiff's claims based upon nonwillful violations of the ADEA are time barred.

To be sure, in *Stilloe v. Almy Bros., Inc.*, 782 F.Supp. 731 (N.D.N.Y.1992), this court did hold that even though a reconsideration motion was not brought within the ten day time frame required by the Local Rule 10(m) (the predecessor to Local Rule 7.1(g)), the court would still entertain such motion because it was brought within a reasonable time under Fed.R.Civ.P. 60(b). *Id.* at 732–33. It is not evident from the face of that decision, but it appears that such motion was brought, at the latest, nine months after the challenged order. For the reasons set forth above, however, unlike *Stilloe*, plaintiff Wanamaker cannot avail himself of Rule 60(b)'s requirement that a motion thereunder be made "within a reasonable time." *See Trus-*

---

**3.** *Accord United States v. Iron Mountain Mines, Inc.*, 812 F.Supp. 1528, 1555 (E.D.Cal.1992) (internal quotations and citation omitted) ("While, ordinarily, a motion under Rule 60(b) may not be made unless the order to be reconsidered is a final ruling from which an appeal could have been taken, the court retains plenary power to afford relief from interlocutory orders and judgment as justice requires notwithstanding Rule 60(b).").

*koski v. ESPN, Inc.,* 60 F.3d 74, 77 (2d Cir.1995) (citing Fed.R.Civ.P. 60(b)).

■ Before turning to Columbian's summary judgment motion, the court notes that even if plaintiff's motion were subject to some reasonableness standard of timeliness, the court agrees with Columbian that plaintiff cannot satisfy the same. As more fully explained in Columbian's memorandum in opposition, plaintiff has offered no explanation or excuse for this undeniably lengthy delay of more than five years between the date of the challenged order and the time he eventually filed this motion. Furthermore, as Columbian accurately points out, even if the basis for this motion is the claimed dispute over whether plaintiff's former attorney received the original summons and complaint returned by the clerk's office, plaintiff knew about that contention on October 2, 1989, at the latest, when his then attorney submitted an affidavit to that effect as part of another motion in this case. *See* Affidavit of Giles Wanamaker (Aug. 19, 1994), exh. C thereto. Similarly, the cases which were decided post *Wanamaker I,* and which plaintiff relies upon in support of this motion, were all decided quite some time ago and if plaintiff wanted to move for reconsideration on the basis thereof, he should have done so closer to the time those decisions were rendered. For example, one case heavily relied upon by plaintiff, *Somlyo v. J. Lu–Rob Enterprises, Inc.,* 932 F.2d 1043 (2d Cir.1991), was decided in 1991—more than three years before plaintiff filed this motion.

Finally, the court also agrees with Columbian that plaintiff's motion is not timely insofar as he is making a retroactivity argument under the Civil Rights Act of 1991. That Act was signed into law on November 21, 1991, and plaintiff waited almost three years after that date to bring this motion. Perhaps, as Columbian suggests, plaintiff was awaiting the Supreme Court's decision in *Landgraf v. USI Film Products,* —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), which was decided on April 26, 1994, just four months

prior to when plaintiff brought this motion. The court once again agrees with Columbian, however, that plaintiff cannot rely upon the *Landgraf* decision to save this motion from untimeliness because as more fully explained in Columbian's opposition memorandum, *Landgraf* rejected the argument that the substantive provisions before the Court in that case [4] were retroactive. Thus, even if the timeliness of plaintiff's reconsideration motion should be judged against a reasonableness standard (a point the court concedes only for the sake of argument), under any scenario, this motion was not brought within a reasonable time after *Wanamaker I.* Accordingly, plaintiff's motion for reconsideration must be denied.

## II. Columbian' Summary Judgment Motion

In three recent cases the Second Circuit has comprehensively outlined the general principles guiding the resolution of summary judgment motions in employment discrimination cases, and the court sees no need to repeat the same herein. *See Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202–03 (2d Cir.1995) (reiterating summary judgment standards); *Goenaga v. March of Dimes Defects Foundation,* 51 F.3d 14, 18 (2d Cir. 1995) (same); *LaFond v. General Physics Services Corp.,* 50 F.3d 165, 171 (2d Cir.1995) (same).

### A. Age Discrimination

Preliminarily the court notes that because the same elements and burdens of proof apply to claims brought under the ADEA and the HRL, as have other courts when faced with age discrimination claims under both statutes, initially the court will just consider plaintiff Wanamaker's ADEA claim. *See Russo v. Rogers & Wells,* 1992 WL 396242 *8 91 Civ. 1371, 1992 U.S.Dist. LEXIS 19412, at *10 (S.D.N.Y. Dec. 21, 1992) (citing *Stein v. McGraw–Hill, Inc.,* 782 F.Supp. 207, 209 n. 1 (S.D.N.Y.1992)).

---

4. The issues before the Court in *Landgraf* were whether the Act's provision creating a right to recover compensatory and punitive damages for certain Title VII violations should be applied retroactively. —— U.S. ——, 114 S.Ct. at 1488. The Court faced the same retroactivity issue with respect to the Act's jury trial provision. *Id.*

## 1. Prima Facie Case

For purposes of this motion only, Columbian willingly concedes that the first three elements of a *prima facie* age discrimination claim are met here; that is that the plaintiff belongs to the protected age group; he was qualified; and he was discharged.[5] *See Cronin, supra,* 46 F.3d at 204. It is Columbian's position, however, that plaintiff cannot establish, factually or legally, the fourth element of a *prima facie* case. Columbian defines that element as a showing by plaintiff that he was replaced by a younger person or that his job was held open for a younger person. Defendants' Supporting Memorandum at 16. In the absence of such a showing, Columbian contends that it is entitled to summary judgment on plaintiff's claims that "age was a motivating factor and made a difference in the decision to discharge [him]" in violation of the ADEA and HRL. Second Amended Complaint at ¶ 59. Columbian's replacement argument counters plaintiff's theory that Richard Cook, one of the remaining individual defendants and a partner at the Syracuse law firm of Hancock & Estabrook, took over all of plaintiff's responsibilities with Columbian, and thus, in essence, plaintiff was replaced by a younger employee.[6] *See, e.g.,* Affidavit of Giles Wanamaker (Nov. 7, 1994), at ¶ 38.

There is authority, which Columbian cites, for the proposition that the fourth element of a *prima facie* age discrimination claim is a showing by the plaintiff that he was replaced by a younger person or that his job was held open for a younger person. *See, e.g., Mitchell v. Worldwide Underwriters Ins. Co.,* 967 F.2d 565, 566 (11th Cir.1992) (under the Eleventh Circuit's "variation" of the *McDonnell Douglas/Burdine*[7] test for establishing a *prima facie* case of discrimination, a plaintiff must show, among other things, replacement by a person outside the protected group); *Penkian v. Bear Stearns & Co., Inc.,* No. C–91–4320, 1992 WL 390705, at *3 (N.D.Cal. Aug. 18, 1992) (replacement an element of *prima facie* case under Ninth Circuit's formulation of *McDonnell Douglas* test).[8] That is simply not the law in this Circuit, however. In *Woroski v. Nashua Corp.,* 31 F.3d 105 (2d Cir.1994), after enumerating the four elements of a *prima facie* case of age discrimination under *McDonnell Douglas,* the Second Circuit emphatically declared, "A plaintiff is **not** required to show that he was replaced by a younger, newly-hired employee." *Id.* at 108 (emphasis added) (citing *Montana v. First Fed. Sav. & Loan Ass'n,* 869 F.2d 100, 104–05 (2d Cir. 1989)).[9] In light of that unequivocal pro-

---

5. Defendants' Supporting Memorandum at 16.

6. The court is fully aware that Columbian does not consider Cook to be its employee, but at most, an independent contractor.

7. This framework for analyzing pretext claims takes its name from two Supreme Court decisions, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), from which it originated.

8. Columbian relies upon two other cases in this regard which are worth mentioning. The first, *Williams v. National Ass'n of College & Univ. Bus. Officers,* 1991 WL 62467, No. 90–2407, 1991 U.S.App. LEXIS 8575 (4th Cir. April 25, 1991) (reported at table case 931 F.2d 888), actually undermines Columbian's position herein because on appeal the Fourth Circuit found, contrary to the district court, that there was an issue of fact precluding summary judgment on whether someone was plaintiff's replacement, or even if, as the employer contended, the asserted replacement spent most of his time on tasks not previously performed by the plaintiff. *Id.* at *6.

What is more, in *Williams,* the Fourth Circuit made clear that in a reduction in force ("RIF") case, which is how Columbian characterizes the present case, the fourth element of a *prima facie* ADEA claim is satisfied by the plaintiff showing that the defendant employer "did not treat age neutrally in its termination decisions." *Id.* (citations omitted). Likewise, the Eleventh Circuit, which decided *Mitchell, supra,* has also modified the *McDonnell Douglas* test to eliminate the replacement requirement in RIF cases because in such cases, "the employer seldom replaces the discharged employee[.]". *Bibby v. Drummond Co., Inc.,* 818 F.Supp. 325, 328 (N.D.Ala.1993), *aff'd without pub'd opinion,* 20 F.3d 1174 (11th Cir.1994). Importantly, as set forth above, this approach is consistent with the law in the Second Circuit.

9. *See also Rose v. Ireco Inc.,* 872 F.Supp. 1127, 1131–32 (N.D.N.Y.1994) (based in part upon *Woroski,* court rejected defendant's assertion that plaintiff was required to show replacement as part of his *prima facie* case); *Owens v. New York City Hous. Auth.,* 1994 WL 97411 *1, 84 Civ. 4932, 1994 U.S.Dist. LEXIS 3348 at *2 (S.D.N.Y. March 17, 1994) (emphasis added) (agreeing

nouncement, the court concludes that even if at one time the law in this Circuit was to the contrary, it is no longer.[10]

■■■■ In this Circuit, the significance of the fact that a plaintiff was never replaced is that it " 'may weaken, but certainly does not eliminate, the inference of discrimination.' " *Sava v. General Elec.,* 877 F.Supp. 81, 83 (D.Conn.1995) (quoting *Meiri v. Dacon,* 759 F.2d 989, 996 (2d Cir.1985), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985)). The court therefore concludes that although Columbian somewhat reluctantly admits it,[11] in establishing a *prima facie* case of age discrimination, as to the fourth element, it is enough that the plaintiff show "that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Viola v. Philips Medical Systems of North America,* 42 F.3d 712, 716 (2d Cir.1994) (internal quotations and citations omitted). This rather "nebulous standard ... may be established with direct, statistical or circumstantial evidence." *Pisana v. Merrill Lynch & Co.,* 1995 WL 438715 *2 93 Civ. 4541, 1995 U.S.Dist. LEXIS 10296, at *7 (S.D.N.Y. July 20, 1995) (citation omitted). Significantly, to establish a *prima facie* case, including this fourth element, a plaintiff's burden is not a heavy one. Indeed, the Second Circuit has variously described this burden as *"de minimis"* or "modest." *See, e.g., Goenaga, su-*

*pra,* 51 F.3d at 18 (citations omitted) ("When the defendant moves for summary judgment on the ground that there is an absence of evidence to support this essential element [circumstances that permit an inference of discrimination], the plaintiff's burden of producing such evidence in opposition to the motion is *de minimis.*"); *LaFond, supra,* 50 F.3d at 173 (same); and *Viola,* 42 F.3d at 716 (internal quotations and citation omitted) ("The burden of establishing a prima facie case is a modest one, ..., but it has substance nevertheless."). Given that relatively low threshold of proof, combined with the voluminous record, the court will follow the expeditious approach of Judge McKenna in *Pisana,* and will simply concede the existence of the fourth element here. *See Pisana,* 1995 WL 438715 *3 1995 U.S.Dist. LEXIS 10296, at *8. The obvious result of that concession is that the court finds a *prima facie* case of age discrimination.

### 2. Legitimate, Non-discriminatory Reason

■■ Unlike Judge McKenna, however, the court will **not** "move directly to the final stage of the *McDonnell Douglas* analysis to determine if [plaintiff] has 'produced sufficient evidence to support a rational finding that the legitimate, nondiscriminatory rea-

---

with plaintiff that she need not prove that she was replaced by a younger candidate, the court explained, "[s]he may **also** satisfy the fourth prong of the *McDonnell Douglas* test by showing that she was terminated under circumstances giving rise to an inference of age discrimination[]"); and *Williams v. 55th Street Theatre Foundation,* 1994 WL 501760 *4 93 Civ. 3385, 1994 U.S.Dist. LEXIS 12898, at *13 (S.D.N.Y. Sept. 12, 1994) (rejecting defendant's argument, on the basis of *Mitchell,* that plaintiff failed to show replacement because his duties were assumed by an independent contractor).

**10.** As recently as 1991, in *Owens v. New York City Housing Authority,* 934 F.2d 405 (2d Cir.), *cert. denied,* 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991), the Second Circuit did list replacement by a younger individual as the fourth element of a *prima facie* age discrimination claim, rather than circumstances giving rise to an inference of discrimination. *Id.* at 409 (citation omitted); *see also Bonura v. Chase Manhattan Bank, N.A.,* 795 F.2d 276, 277 (2d Cir. 1986) (same); and *Haskell v. Kaman Corp.,* 743

F.2d 113, 119 n. 1 (2d Cir.1984) (same). As the court in *Stein, supra,* convincingly explained, however,

> "[n]ot only is this statement in *Owens* dicta, but it most likely is a mistake. The *Owens* court cites *Montana [supra],* in support of the four prong test. The *Montana* court explicitly states that there is no need to show that the employee discharged was replaced by a younger employee."

782 F.Supp. at 210 n. 2 (citing *Montana,* 869 F.2d at 104–05). This court agrees with that assessment of *Owens,* which, as noted above, the more recent *Woroski* decision reinforces.

**11.** In its supporting memorandum, Columbian focused almost exclusively on the lack of a replacement and gave only cursory treatment to whether plaintiff Wanamaker has shown on this record, circumstances giving rise to an inference of age discrimination. *See* Defendants' Supporting Memorandum at 15–20. Columbian did retreat somewhat from that hard and fast position, however, in its reply memorandum. Defendants' Reply Memorandum at 3 n. 1.

sons proffered by the employer were false.'" *Id.* (quoting *Woroski,* 31 F.3d at 109–110). "Instead, the court will pause briefly to consider whether Columbian "proffers," through the introduction of admissible evidence, 'reasons for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action[.]'" *See Cronin, supra,* 46 F.3d at 203 (quoting *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993)) (quoting in turn *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094–95) (emphasis in original). As the Second Circuit has so succinctly stated, "This explanation must be 'clear and specific.'" *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1226 (2d Cir.1994) (quoting *Meiri, supra,* 759 F.2d at 998). Columbian's explanation easily satisfies this standard. Similar to the defendant employer in *Gallo,*[12] Columbian has presented affidavits from one of its past officers, George R. Metcalf,[13] and a current Columbian officer, Stephen G. Ludt,[14] outlining the financial difficulties which besought Columbian in the early 1980's, and which eventually resulted in Columbian deciding that it could no longer afford, among other things, "the luxury of an in-house counsel," in addition to the many outside law firms performing legal services on Columbia's behalf. Metcalf Aff. at ¶ 12; and Ludt Aff. at ¶ 11. Although Columbian evidently came to that conclusion in 1982, it twice postponed the decision to abolish plaintiff's in-house counsel position. *See id.* at ¶¶ 12–16; and Ludt Aff. at ¶¶ 12–16. The first postponement was based upon the advice of defendant Cook "who told the board that it would be wiser, in the event it became necessary to file a bankruptcy petition, to pay the plaintiff as an employee rather than as an outside attorney whose bills for legal fees would have to be submitted to and ap-

proved by the bankruptcy court." Metcalf Aff. at ¶ 13; *see also* Ludt Aff. at ¶ 13 (same).

In 1984, the decision to abolish plaintiff's position was again deferred because at that time Columbian was involved in antitrust litigation and Columbian believed that plaintiff should continue to work with outside counsel in coordinating those litigation efforts. *Id.* at ¶ 15; *see also* Ludt Aff. at ¶ 14 (same). Once the antitrust litigation was substantially resolved, however, Columbian could no longer justify, from an economic standpoint, retaining plaintiff Wanamaker as in-house counsel. *Id.* at ¶¶ 16–17; *see also* Ludt Aff. at ¶ 15. In the court's opinion, this evidence is more than sufficient to rebut plaintiff's presumption of age discrimination arising from his *prima facie* case. *See Viola, supra,* 42 F.3d at 717 (plaintiff's *prima facie* showing effectively rebutted by employer's "evidence that it implemented a business-justified, company-wide reduction in its work force in response to changes in business emphasis and economic necessities[;]" that "it relied upon non-discriminatory guidelines in selecting employees to be fired[;]" and affidavits from those implementing the RIF showing that the decision to terminate plaintiff was based upon an unfavorable performance review, regardless of his age). Succinctly stated, that presumption of discrimination now "'drops out of the picture.'" *See Cronin,* 46 F.3d at 203 (quoting *Hicks,* —— U.S. at ——, 113 S.Ct. at 2749).

### 3. Pretext

 "Once an employer has produced evidence of a non-discriminatory rationale for its actions, "the factual inquiry proceeds to a new level of specificity."" *Viola,* 42 F.3d at 717 (quoting *Hicks,* —— U.S. at ——, 113 S.Ct. at 2752) (quoting in turn *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1095). In this third

---

**12.** In *Gallo,* the Second Circuit found that the affidavits of various of the employer's officers which were submitted to show that when plaintiff was discharged "the company was in a business down-turn and that a reduction-in-force was necessary to meet its budgetary goals[]" was sufficient to rebut the presumption of age discrimination established by plaintiff's *prima facie* case. 22 F.3d at 1226.

**13.** In 1988, Mr. Metcalf left the active management of Columbian. Affidavit of George R. Metcalf (Aug. 17, 1994) at ¶ 4. Prior to that he had served Columbian in various capacities, including as chairman of the board of directors. *Id.* He was elected to the board in 1980. *Id.*

**14.** Mr. Ludt is Columbian's president, treasurer, and general manager of its Guntown, Mississippi manufacturing facility. Affidavit of Stephen G. Ludt (Aug. 16, 1994) at ¶ 1.

step of the *McDonnell Douglas/Burdine* analytical framework, "[t]he plaintiff has the 'ultimate burden of persuasion' to demonstrate that the challenged employment decision was the result of intentional discrimination." *Id.* (quoting *Hicks,* —— U.S. at ——, 113 S.Ct. at 2749). "To defeat a properly supported motion for summary judgment, plaintiff must 'produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, *and* that more likely than not the employee's age was the real reason for the discharge.' " *Id.* (quoting *Woroski,* 31 F.3d at 110) (citing in turn *Hicks,* —— U.S. at ——, 113 S.Ct. at 2752) (emphasis added by Second Circuit).

Plaintiff Wanamaker is simply unable to satisfy that criteria on the record as it is presently constituted. After reviewing the applicable law, the substantial record, and the parties' arguments, the court is convinced that Columbian "has come forward with evidence of a dispositive nondiscriminatory reason [corporate downsizing and reorganization due to its unstable economic condition] as to which there is no genuine issue and which no rational trier of fact could reject[.]" *See Cronin,* 46 F.3d at 203. Conversely, the court is also convinced that a reasonable fact finder could not infer pretext or age discrimination from the circumstances under which plaintiff's position as in-house counsel was eventually abolished. In reaching this conclusion, the court relies upon the persuasive arguments of Columbian set forth in its supporting and reply memorandums and amplified during oral argument. While the court is sympathetic to plaintiff Wanamaker's situation, the fact remains that in opposing this summary judgment motion, he has presented arguments which "are based largely upon conclusory allegations, improbable inferences, and unsupported speculation[ ]"—none of which are sufficient to defeat a properly supported summary judgment motion such as Columbian's. *See LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 849 (1st Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994).

Before considering plaintiff's retaliatory discharge claim, the court observes that the present case is readily distinguishable from two cases in which the Second Circuit reversed grants of summary judgment in favor of the employers. In both *Gallo, supra,* and *Montana, supra,* the Second Circuit reversed and remanded where there was evidence that the plaintiff employees' duties had been reassigned to younger employees. Those reassignments, in combination with other factors, led the Second Circuit in both of those cases to conclude that the plaintiff employees had at least shown a genuine issue of ·material fact as to pretext. Unlike the present case, however, in *Gallo* there was proof before the district court that not only was ninety-nine percent of plaintiff's work transferred to another company department within nine months after her discharge, but also, in direct contravention of the company's personnel policy and procedure manual, plaintiff was not considered for another position which required the person filling the same to devote up to eighty percent of his or her time doing work which plaintiff had previously performed. 22 F.3d at 1228. The proof here stands in stark contrast to the proof before the *Gallo* Court. There is absolutely no proof that plaintiff Wanamaker was not offered another position within Columbian. The reason is readily apparent: he is a lawyer and Columbian had only one such position, which it eliminated for economic reasons. Plaintiff himself does not suggest that there was another position within Columbian for which he was qualified, but was not considered.

The circumstances giving rise to an inference of pretext in *Montana* were also markedly different from plaintiff Wanamaker's proof. The court will highlight a few of the more obvious factual distinctions between *Montana* and this case. In the corporate reorganization at issue in *Montana,* in contrast to the present case, the plaintiff "was the only department head whose position was consolidated into the corporate headquarters . . . and whose staff continued without her." 869 F.2d at 105. In addition, also unlike the present case, the employer in *Montana* failed to consider the plaintiff for another position for which she was qualified. Here, as just discussed, plaintiff Wanamaker, an attorney, was not qualified to hold any other available

position with Columbian. The Court in *Montana* also pointed out that after plaintiff's discharge, her employer increased the number of employees in its personnel department (the department of which plaintiff had been the head) by three, but it did not offer or even consider plaintiff for those other positions. *Id.* at 105–06. None of the proof before the court on this motion comes even close to raising the possibility of an inference of discrimination, which the proof in *Montana* certainly did. Thus, although there are cases, such as *Gallo* and *Montana,* where the proof amply demonstrated the existence of a genuine issue of material fact as to pretext, this is not such a case. When viewing the record as a whole, the court is convinced that Columbian's decision to abolish plaintiff's position as in-house counsel "[is] fully consistent with the conduct of non-discriminatory business affairs, and there is no evidence that casts these events in any other light." *See Viola, supra,* 42 F.3d at 717.

■ To summarize, under the three-step *McDonnell Douglas/Burdine* analytical framework, although the court is willing to concede that plaintiff Wanamaker has met his *de minimis* burden of establishing a *prima facie* case, it also finds that Columbian has successfully rebutted plaintiff's *prima facie* case by articulating a legitimate, non-discriminatory reason for abolishing plaintiff's position as in-house counsel—corporate downsizing and reorganization due to financial difficulties stemming from several factors such as a significant decline in the sales of

Columbian's primary product, rope, and because of increased foreign competition. Furthermore, plaintiff fails to raise a genuine issue of material fact with respect to whether abolition of his position was the result of intentional discrimination. Consequently, the court grants Columbian's motion for summary judgment as to plaintiff's first cause of action.[15]

## B. Retaliatory Discharge

In his second cause of action, plaintiff alleges that Columbian unlawfully retaliated against him when it accelerated his termination date in March, 1987. *See* Defendants' exh. J. That March termination was against the backdrop of plaintiff having written a memorandum, dated March 2, 1987, to defendants Metcalf and Ludt advising them of his belief that Columbian's decision in October, 1986, to eliminate plaintiff's position was violative of both the ADEA and the HRL. *See* Defendants' exh. I.[16] As requested, plaintiff met with Columbian's board of directors at their March 5, 1987, board meeting. Defendant Metcalf avers that he "interpreted plaintiff's memorandum and subsequent discussions held during the board meeting as an indication that if the decision to abolish plaintiff's position and end his employment at [Columbian] was not rescinded, he would file an age discrimination claim." Metcalf Aff. at ¶ 20. Plaintiff claims that during that board meeting he was "queried ... regarding his intention to file a charge or litigate, inferring and stating that forbearance of rights might be a condition of relief or other benefits."

---

**15.** As previously mentioned, the elements and burdens of proof of an ADEA claim are coincident with those of a claim under New York's HRL. Consequently, because the court has found that plaintiff's ADEA claim cannot survive Columbian's summary judgment motion, it necessarily follows that the court must also grant summary judgment in favor of Columbian on plaintiff's first cause of action insofar as it is premised upon alleged violations of New York's HRL. *See Spence v. Maryland Cas. Co.,* 995 F.2d 1147, 1158 (2d Cir.1993) (citation omitted) (affirming district court's grant of summary judgment in favor of the employer on and ADEA claim, and finding no err in the court's dismissal of plaintiff's age discrimination claim under the HRL because both claims are governed by the same standards).

**16.** The full text of that memo is as follows:

> I write this memo reluctantly but necessarily. After research and consultation with counsel expert in the area, it is my belief that the action taken by directors to terminate my employment as explained to me violates the federal Age Discrimination in Employment Act as well as the New York Human Rights Law. I respectfully request that the directors reconsider and reverse their decisions regarding my employment. I would appreciate an opportunity to meet with the directors for this purpose.

Defendants' exh. I. Contrary to what defendant Ludt avers, this memorandum does not explicitly state that if "the board did not rescind its decision to abolish [plaintiff's] position, he would make a legal claim that the decision constituted unlawful age discrimination." Ludt Aff. at 4, ¶ 18.

**534**

Wanamaker Aff. at 16, ¶ 45. Plaintiff Wanamaker contends that those actions evince retaliatory intent.

In any event, after that meeting, plaintiff was advised in writing that he was terminated "effective immediately," but that his salary would continue through June 30, 1987. Defendants' exh. J. Plaintiff was also instructed to remove his personal belongings from his office by March 10, 1987. *Id.* The continuation of plaintiff's salary through that date was in accordance with an earlier meeting on October 31, 1986, between plaintiff and defendants Metcalf and Ludt, at which plaintiff was advised of the board's decision to abolish the in-house counsel position and hence terminate him. *Id.; see also* Ludt Aff. at ¶¶ 15–16; and Metcalf Aff. at ¶ 17. At that meeting, those defendants made plaintiff's six month notice effective December 31, 1986, so that his salary would continue through June 30, 1987. *Id.; see also* Defendants' exh. H.

Because it is undisputed that despite being terminated on March 5, 1987, plaintiff continued to receive his salary until June 30, 1987, Columbian asserts that plaintiff's retaliation claim is not viable because he did not lose any pay or other tangible benefits, and thus he was not disadvantaged by Columbian's decision to terminate him in March, 1987. What is more, as this court found in *Wanamaker I*, "plaintiff's salary and benefits were extended for an additional three months beyond June, 1987 at 70% of his previous rate of pay." 713 F.Supp. at 535. Making a somewhat novel argument, Columbian further contends that plaintiff cannot prevail on his retaliation claim because under the Code of Professional Responsibility, termination of the attorney-client relationship is mandated when, as did plaintiff Wanamaker, an attorney threatens to sue his client. Columbian reasons that plaintiff Wanamaker's threat of legal recourse provided it with a legitimate, non-discriminatory reason for terminating him in March, 1987.

Plaintiff responds that of course this March 5, 1987, dismissal was disadvantageous to him because he no longer had an office or support services to assist in his job search. Defendant Ludt concedes that when

plaintiff was informed on October 31, 1986, of Columbian's decision to abolish his position and terminate him, he "requested and was provided with extensive outplacement services, at [Columbian's] expense." Ludt Aff. at 4, ¶ 17. The record is silent, however, as to the extent and nature of the services provided prior to March, 1987. Plaintiff posits that those losses may well have contributed to his inability to obtain subsequent employment. To bolster his contention that his accelerated termination of March, 1987, was adverse, plaintiff explains, albeit not quite in these terms, that his reputation was damaged because he was terminated earlier than anticipated, and attorneys, as well as others, saw him unexpectedly moving out of his office, which was located on Main Street in Auburn, New York. *See* Wanamaker Aff. at ¶ 49.

### 1. Prima Facie Case

Section 4(d) of the ADEA prohibits an employer from discriminating "against any of his employees or applicants for employment, ..., because such individual, ..., has opposed any practice made unlawful by this section, or because such individual, ..., has made a charge ... under this chapter." 29 U.S.C. § 623(d) (West 1985). " 'The objective of this section is obviously to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice.' " *Edwards v. Interboro Institute*, 840 F.Supp. 222, 228 (E.D.N.Y.1994) (quoting *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988)). "In order to make out a prima facie case of discriminatory retaliation, a plaintiff must show by a preponderance of the evidence i) participation in a protected activity known to the defendant; ii) an employment action disadvantaging the plaintiff; and iii) a causal connection between the protected activity and the 'adverse employment action.' " *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995); and *Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 250 (2d Cir.1995) (same). At this juncture, the court is only concerned with the second element.

■ As is readily apparent, Columbian and plaintiff strongly disagree as to what constitutes adverse action so as to satisfy that second element. To place the parties' respective arguments in context, the court will briefly review how courts have defined this adverse action component of a retaliation claim. "[T]o establish that the employer's conduct toward the plaintiff constitutes an adverse action, the plaintiff must prove that the conduct 'affected the terms, privileges, duration, or conditions of the plaintiff's employment.'" *Vergara v. Bentsen*, 868 F.Supp. 581, 592 (S.D.N.Y.1994) (quoting *Rooney v. Witco Corp.*, 722 F.Supp. 1040, 1046 (S.D.N.Y.1989)). True, "[i]n most cases the alleged [adverse] conduct involves instances of retaliatory discharge[.]" *Id.* (and cases cited therein). In *Penny v. Winthrop–University Hosp.*, 883 F.Supp. 839 (E.D.N.Y. 1995), the court broadly described "adverse action" though, as action "which adversely impacts on the employee, such as a discharge, demotion, or failure to promote." *Id.* at 845 (citations omitted). Furthermore, the *Vergara* listed the following additional examples of adverse actions, short of outright termination: providing unfair work references, placing false information in the complainant's personnel file, failing to promote the employee, subjecting an employee to unreasonable working conditions, or giving an employee unjustifiably negative performance evaluations. 868 F.Supp. at 592 (and cases cited therein).[17] Thus, as the foregoing demonstrates, while discharge is probably one of the most common forms of adverse action to a plaintiff employee, certainly it is not the only form. *Lees v. Case–Hoyt Corp.*, 779 F.Supp. 717, 726 (W.D.N.Y.1991).

**17.** *See also Owens, supra*, 1994 WL 97411 *2–3 1994 U.S.Dist. LEXIS 3348, at *7–*8 (employer's discontinuance of plea negotiations in connection with a disciplinary proceeding against plaintiff constituted and adverse employment action so as to support plaintiff's retaliation claim). For a comprehensive overview of how courts from other jurisdictions have construed the adverse action element of an ADEA retaliation claim, *see Nelson v. Upsala College*, 51 F.3d 383, 386–89 (3d Cir.1995); *Flaherty v. Gas Research Institute*, 31 F.3d 451, 456–57 (7th Cir.1994) (and cases discussed therein); *Collins v. State of*

### a. Adverse Action

■ To determine whether plaintiff Wanamaker suffered adverse employment action in March, 1987, requires the court to carefully examine the exact circumstances under which his termination was accelerated then.[18] After doing so, the court is convinced that even though it is somewhat of a close call, plaintiff is unable to establish a *prima facie* case of retaliation because he cannot show that he was disadvantaged by the earlier termination date. The alleged retaliation here did not take the form of discharge because that had already occurred on October 31, 1986, when plaintiff was advised that his position was finally being abolished and thus he was being terminated. In attempting to show that he was disadvantaged by Columbian's actions on March 5, 1987, wisely, plaintiff does not focus on the fact of termination. Instead, plaintiff asserts that by accelerating his termination date, his reputation was damaged and he was left with no office and support services with which to conduct his job search.

While the court is sympathetic to the predicament in which plaintiff found himself in March, 1987, without more, the court cannot find that these facts, which are undisputed, resulted in adverse action to plaintiff for purposes of establishing a *prima facie* retaliation claim in violation of section 623(d) of the ADEA. First of all, as the case law demonstrates, neither loss of reputation nor loss of support services falls within the category of personnel actions which courts have deemed to be adverse within the meaning of that statute. In fact, in *Connell v. Bank of Boston*, 924 F.2d 1169 (1st Cir.), *cert. denied*, 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991), a case remarkably similar to the

*Ill.*, 830 F.2d 692, 702–03 n. 7 (7th Cir.1987) (and cases listed therein); and *Boyd v. Brookstone Corp. of New Hampshire, Inc.*, 857 F.Supp. 1568, 1572–73 (S.D.Fla.1994) (and cases outlined therein).

**18.** *See Welsh v. Derwinski*, 14 F.3d 85, 86 (1st Cir.1994) ("Within reasonable limits, in order to arrive at a determination [as to whether a given act constitutes an adverse employment action within the meaning of the ADEA], a case by case review is necessary.")

present one, on May 30, 1986, plaintiff was informed that he would be terminated effective June 30, 1986. At the same time, however, the bank also told him that so long as his work was up-to-date, he could use his office until the end June to contact prospective employers. *Id.* at 1178. After plaintiff had retained counsel and before the end of the month, on June 13, 1986, plaintiff was ordered to vacate his office, and was told that he would have no further access to any bank office. The First Circuit found that although the accelerated discharge "could be found to be retaliatory, it was not an adverse employment action within the meaning or intent of 29 U.S.C. § 623(d)." *Id.* at 1180 (emphasis added). In reaching that conclusion, the Court noted that plaintiff received his severance pay and other benefits through the end of June. In addition, his pension had vested prior to his notification of discharge. *Id.* at 1179. Consequently, he did not suffer any loss of valuable benefits. Thus, according to the *Connell* Court, "[t]he only detriment to plaintiff as a result of the Bank's sudden eviction of him from its premises was the loss of the use of his office for a period of two weeks to contact prospective employers[,]" which the court did not deem sufficiently adverse to establish a *prima facie* case of retaliation. *Id.* The Court therefore affirmed the district court's grant of summary judgment in favor of the defendant employer on that claim. *Id.* at 1180.[19]

The court in *Miller v. Aluminum Co. of America*, 679 F.Supp. 495 (W.D.Pa.), *aff'd without pub'd opinion*, 856 F.2d 184 (3rd Cir.1988), reached a similar result. There the plaintiff was told in early September, 1983, that she would be terminated for poor performance at the end of December, 1983. She then filed a charge with the Equal Employment Opportunity Commission ("EEOC") on October 12, 1983, alleging sexual discrimination. Less than a month later, on November 7, 1983, plaintiff's supervisors told her not to report to work anymore. Although plaintiff was unaware of it, her pay and benefits continued in full from November 7, 1983, through the end of December, 1983. The defendant employer argued, as does Columbian, that because her pay and benefits continued, plaintiff suffered no adverse employment action. Plaintiff responded "that she suffered adverse employment action in the form of the loss of the psychological benefit of having a job." *Id.* at 504.

Even though there was a factual issue as to the causal link element of plaintiff's *prima facie* retaliation claim, nonetheless, the court granted summary judgment in defendant's favor, explicitly finding that plaintiff's "early lay-off was not adverse employment action[ ]" because she "received full salary and benefits as if she worked until December 31, 1983, her scheduled termination date." *Id.* (citations omitted). As the court pointedly noted, "[Plaintiff] was paid as if she were working, without having to show up for work." *Id.* The court further reasoned that plaintiff's situation was analogous to those where courts have found "that temporary transfers or demotions which reduce the employee's duties and responsibilities but maintain her salary and benefits as before do not constitute adverse employment action." *Id.*[20]

In the court's opinion, *Connell* and *Miller*[21] effectively preclude plaintiff Wanamak-

---

**19.** *Cf. Parsons. v. Philadelphia Off. of Drug & Alcohol Abuse,* 833 F.Supp. 1108, 1120–21 (E.D.Pa.1993) (no evidence to support plaintiff's retaliation claim where, among other things, although she was originally reprimanded and docked pay for attending a conference without her supervisor's permission, eventually her pay was restored).

**20.** *See also Howze v. Virginia Polytechnic & State Univ.,* 901 F.Supp. 1091, 1096 94–1059–R, 1995 U.S.Dist. LEXIS 12072, at *12–*13 (W.D.Va. July 12, 1995) (claim of retaliation on the basis of the tenure process failed for lack of any adverse employment action where plaintiff was ultimately awarded her promotion and tenure and given

pay and rank increases at the same time as other promotees).

**21.** Factually, there is a slight difference between *Miller* and the present case, in that in the former the plaintiff did not lose her office or support services, whereas plaintiff Wanamaker did. That factual distinction does not render *Miller* inapplicable here. What is significant about *Miller* and the present case is that despite accelerating the termination dates, both plaintiffs continued to receive salary and benefits in accordance with earlier agreements. Additionally, in the court's opinion, loss of an office and support services standing alone does not rise to the level of an adverse employment action. This is **not** a situa-

er's claim that he sustained an adverse employment action because after his termination date was accelerated in March, 1987, he no longer had an office or support services to assist him in finding a new job. Further support for the court's position is found in the fact that plaintiff's loss of his office and support services is not a change which affected the terms and conditions of his employment at Columbian. Plaintiff fares no better with his claim that he was disadvantaged by his accelerated termination date because his reputation was purportedly damaged thereby. *See Flaherty v. Gas Research Inst.,* 1993 WL 410068 *4 92 C 7315, 1993 U.S.Dist. LEXIS 14391, at *14 (N.D.Ill. Oct. 13, 1993) (court granted defendants' motion as to plaintiff's age and retaliation claims under the ADEA, reasoning, *inter alia,* that "humiliation, even public humiliation, is not sufficient to establish age discrimination...."). Moreover, if plaintiff believed that his reputation was damaged on a defamation theory (a theory not suggested in his complaint), he could seek relief under the common law, and would not need to rely upon section 623(d) of the ADEA. *See Nelson, supra,* 51 F.3d at 388. In short, there is nothing in the present record showing that plaintiff was disadvantaged so as to allow him to invoke the ADEA's anti-retaliation provision. Accordingly, because plaintiff has failed to establish a critical element of his *prima facie* retaliation cause of action, defendants are entitled to summary judgment as to that cause of action as well.[22]

Before leaving plaintiff's retaliation claim altogether, there is one aspect of that claim which the court has deliberately omitted to this point, and that is plaintiff's assertion that originally he was to be terminated effective March 5, 1987, which would have deprived him of his early retirement benefits because he needed to remain on as an employee until at least May 18, 1987, his fifty-fifth birthday, to be eligible for such benefits. *See* Wanamaker Aff. at ¶ 49. While plaintiff's retaliation claim may have survived Columbian's summary judgment motion had he been able to show that he did not receive renumeration, the fact remains that he did. Indeed, as mentioned earlier, plaintiff received compensation even beyond that which was originally agreed to, when Columbian paid him seventy percent of his salary for an additional three months after June, 1987.

Moreover, the court is not swayed by plaintiff's speculative assertion that the March 5, 1987, board minutes were altered to make plaintiff's termination effective June 10, 1987, instead of immediately. *See id.* at ¶ 48. Nothing in the record supports this bald assertion. Furthermore, the board minutes which are part of the record plainly show that prior to the motion as to plaintiff's termination, which included the conditions thereof, plaintiff left the meeting. Plaintiff's exh. 27 at 1048. Therefore, he had no personal knowledge of the circumstances surrounding the vote on the resolution to terminate him,[23] and plaintiff refers the court to nothing else which would even arguably tend to support his belief that the board minutes were altered. Thus, because plaintiff did receive his salary and benefits during the relevant time frame (and beyond), and that fact is undisputed, even if Columbian's earlier termination could be deemed retalia-

---

tion such as that presented in *Collins, supra,* where the Court did find adverse employment action under Title VII (the elements of retaliation under this statute are same as those for ADEA retaliation claim) where plaintiff had been transferred to new department, but her supervisors were unsure of her new responsibilities; she was largely relegated to reference rather than consulting work; and she had lost her office and telephone. 830 F.2d at 704. Thus, although *Collins* does not explicitly hold, the clear import of that case is that loss of an office must be in conjunction with other losses relating to terms and conditions of employment before such loss will be tantamount to adverse action.

**22.** Plaintiff's second cause of action for retaliation is brought, like his first, under both the ADEA and New York's HRL. The court cannot find, and the parties do not suggest, that the elements of a retaliation claim vary depending upon which statute plaintiff relies. Therefore, because the court has determined that plaintiff's retaliation claim is not viable under the ADEA, that claim is also not viable insofar as it is premised upon the HRL.

**23.** *See* Fed.R.Civ.P. 56(e) (requiring affidavits submitted in connection with a summary judgment motion to be based upon "personal knowledge").

tory, in the end plaintiff is unable to show that he was disadvantaged and that is fatal to his ADEA retaliation claim.[24]

Having determined that plaintiff cannot establish a *prima facie* case of retaliation, the court need not and will not delve into the more troublesome issue of whether, as Columbian strongly urges, it had a right to terminate plaintiff when he indicated (or so Columbian believed) that he intended to sue Columbian for age discrimination.

### C. Breach of Contract

In his third and only remaining cause of action, plaintiff asserts a claim for breach of employment contract. There was no formal written employment contract between plaintiff and Columbian, however. And despite a litany of terms and conditions which plaintiff avers were orally agreed to between he and Columbian,[25] the only written memorialization of their agreement is a cursory memorandum dated March 7, 1974, from Legare Hole, Columbian's president at the time, which reads as follows:

> This will confirm our verbal agreement, as set forth herein. As a condition of your employment, the Company agrees that in the event your employment is terminated, the Company will furnish you with written notice of said termination at least six months prior to the effective date of termination.

Plaintiff's exh. 4.[26] Thus, necessarily this cause of action is based upon plaintiff's allegations that in 1974 certain oral statements were made to him by Columbian officials to the effect that he would not be terminated except for cause. *See* Wanamaker Aff. at ¶ 12(a). To illustrate, plaintiff avers that Paul George (now deceased), the vice president and a director at the time, had a breakfast meeting with plaintiff at which George allegedly assured him, among other things, that the position of in-house counsel was a "career" position. *Id.* at ¶ 3. Wanamaker further avers that in meeting with various officers and agent of Columbian, they each assured him "that there was no need for concern in that the position would be a job for the balance of the incumbent's career." *Id.* at ¶¶ 4 and 5. Plaintiff also points out that on approximately February 19, 1974, when Columbian made him an offer of employment, Mr. Hole, "[i]n response to plaintiff's repeated concern, ... conditioned the offer to be for a 'permanent career' position." *Id.* at ¶ 10. A short time later, plaintiff accepted the job, upon that condition. *Id.* at ¶ 11. Plaintiff vehemently maintains that the foregoing establishes an issue of fact, and thus summary judgment on his breach of employment contract claim is improper.

Columbian's response is short and to the point: Oral assurances of lifetime employment, or a suggestion that an employee would be fired only for cause, without more, are insufficient to support a claim for breach of employment contract under New York law. The court agrees.

"Under New York law, 'absent agreement establishing a fixed duration,' an employment relationship is presumed to be hiring at will, terminable at any time by either party." *Tischmann v. ITT/Sheraton Corp.*, 882 F.Supp. 1358, 1366–67 (S.D.N.Y.

---

24. The court is fully aware that its decision on the retaliation claim is at odds with the EEOC's finding that Columbian retaliated against plaintiff by "accelerating the effective date of discharge because [plaintiff] had questioned the decision to terminate him." Defendants' exh. B at 2. However, "[a]dmissibility of EEOC reasonable cause determinations is within the discretion of the trial court, depending on the probative value of the information in the determination and the problems of the inability of defendants to cross-examine the report and the hearsay it may contain." *EEOC v. Regency Architectural Metals Corp.*, 896 F.Supp. 260, 263, 1995 U.S.Dist. LEXIS 11439, at *4 (D.Conn.1995) (citation omitted). This court has not given the EEOC's determination any weight though because it contains no legal analysis, which, in any event would be the province of the court. *See id.* What is more, as the foregoing discussion indicates, while there may have been a factual basis for the EEOC's finding of retaliation, clearly there is no legal basis for such a finding. And consequently, the EEOC's probable cause determination is not dispositive here.

25. *See* Wanamaker Aff. at ¶ 12.

26. Defendants have supplied a nearly identical memo, except that their copy is dated March 6, 1974, and the author of that memo is unknown. *See* Defendants' exh. G.

1995) (quoting *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919, 920 (1987) (other citation omitted)). That employment-at-will doctrine gives "[a]n employer ... a nearly unfettered right to discharge an employee." *Jones v. Dunkirk Radiator Corp.*, 21 F.3d 18, 21 (2d Cir.1994) (citations omitted). Thus, in New York, "[a]n employer may discharge an at-will employee at any time with or without cause." *Tischmann*, 882 F.Supp. at 1367 (citations omitted). Plaintiff Wanamaker cannot overcome this well-settled rule by relying solely upon alleged oral assurances by various Columbian officials that his job as in-house counsel was to be a "career" or "permanent," or an oral assurance that he would be terminated only for cause. *See, e.g., Fitzgibbon v. Sanyo Secs. America, Inc.*, 1994 WL 281928 *6 92 Civ. 2818, 1994 U.S.Dist. LEXIS 8386, at *18 (S.D.N.Y. June 21, 1994) (citation omitted) (defendants' motion for summary judgment on breach of implied covenant of good faith and breach of contract granted because "[o]ral assurances alone are insufficient to establish ... an agreement to limit the employer's right to terminate the employee[]"); *Rovtar v. Union Bank of Switzerland*, 852 F.Supp. 180, 187 (S.D.N.Y. 1994) (defendant entitled to summary judgment on breach of employment contract claim where court could not infer that plaintiff's employment contract was of a fixed duration based upon oral statements allegedly made by senior level employees regarding job security, as well as similar statements in an employee reference manual); *Cucchi v.*

*New York City Off–Track Betting Corp.*, 818 F.Supp. 647, 652–53 (S.D.N.Y.1993) (comprehensively reviewing New York and Second Circuit case law regarding the same); and *Kelly v. Chase Manhattan Bank*, 717 F.Supp. 227, 234 (S.D.N.Y.1989) ("statements to the effect of: 'you will have a good career with Chase;' 'don't worry you will not be terminated; there are plenty of jobs for good managers;' and 'there is nothing to worry about, we will find jobs for everybody[ ]' " insufficient as a matter of law to create an employment contract). As the foregoing amply demonstrates, the fact that plaintiff was supposedly told by Columbian officials that his job as in-house counsel would be a career or permanent position is simply not enough to defeat Columbian's motion for summary judgment on this third cause of action.[27]

Plaintiff tries in vain to avoid this result by relying, among other things, upon the Second Circuit's decision in *Ohanian v. Avis Rent a Car System, Inc.*, 779 F.2d 101 (2d Cir.1985). The court does not find *Ohanian* dispositive, however, because as the *Cucchi* court soundly explained, the former "has been undercut by the subsequent New York Court of Appeal's decision in *Sabetay*." *Cucchi, supra*, 818 F.Supp. at 653. Even in the absence of the *Sabetay* decision, this court agrees with the court's reasoning in *Cucchi* that

> Given the evolution of New York case law since the [*Ohanian* ] decision, we believe that the New York Court of Appeals would now hold that an employer's oral assurances about termination that induce a person to become an employee of that employ-

---

**27.** Quite recently, in *Marfia v. T.C. Ziraat Bankasi*, 903 F.Supp. 463 (S.D.N.Y.1995), the court did uphold a jury verdict finding that "[t]he totality of the circumstances created an express limitation on the [employer's] right to otherwise discharge [the plaintiff] at will." *Id.* at 470. As part of the proof in that case, the plaintiff claimed that the employer's general manager assured him that he could stay for the " 'rest of [his] professional life.' " *Id.* at 470. Importantly, unlike the present case, that oral assurance was not the only proof before the jury. There the jury was also free to consider the employer's personnel manual which could fairly be read as requiring good cause before discharging an employee. *Id.* at 469. That same manual also listed reasons for termination, but omitted discharge without cause. The court found that such omission could "reasonably be construed as an

express limitation on an employer's right to discharge without cause." *Id.* at 469 (footnote omitted). Two other factors also contributed to the jury's finding that the employer did not have the right to terminate plaintiff at will. They were the manual's contractual limitation on the employer's ability to discharge an employee for discriminatory reasons, and the fact that all employees were bound by the manual's terms, which had been approved by the head office. *Id.* at 470.

*Marfia* is readily distinguishable from the present case, however, because that jury had far more than verbal assurances from which to find an express limitation on the employer's right to discharge. In the present case, that is the **only** sort of proof plaintiff Wanamaker proffers to support this cause of action. Plainly, then, *Marfia* does not mandate a different result here.

er, are not a sufficient basis for a jury to conclude that the employer expressly agreed to limit his right to fire the employee at will.

*Cucchi*, 818 F.Supp. at 653. In light of the foregoing, the court believes that plaintiff's reliance upon *Ohanian* is misplaced.

■ There is an extremely limited exception to the general rule that no cause of action exists for termination of an at-will employee. *See Weiner v. McGraw–Hill*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982). According to the *Weiner* Court, a cause of action to recover damages for breach of an employment contract may be maintained if the employee demonstrates the following:

1) the employee was induced to leave his prior employment by the assurance that his employer would not discharge him without cause;

2) that assurance was incorporated into the employment application;

3) the employee rejected other offers of employment in reliance on the assurance;

4) a personnel handbook or manual provides that dismissal will be for just cause only.

*Calder v. Planned Community Living, Inc.*, 1995 WL 456400 *5–6 93 Civ. 8882, 1995 U.S.Dist. LEXIS 10773, at *14–*15 (S.D.N.Y. Aug. 1, 1995) (citing *Weiner*, 457 N.Y.S.2d at 197, 443 N.E.2d at 445). "The Second Circuit, in what has been called a 'totality of circumstances' approach, views the *Weiner* factors flexibly." *Pisana, supra,* 1995 WL 438715 *10–11 1995 U.S.Dist. LEXIS 10296, at *32–*33 (citing *Gorill v. Icelandair/Flugleidir,* 761 F.2d 847, 853 (2d Cir.1985)). Even taking a flexible rather than a mechanical approach to the *Weiner* factors, plaintiff Wanamaker is unable to avail himself of *Weiner*'s narrow exception to an employer's right to discharge an at-will employee.

Nowhere in this record are there "facts sufficient to demonstrate that the formidable *Weiner* standard for breach of an express employment contract can be met." *Coraggio v. Time Inc.,* 1995 WL 242047 *5 94 Civ. 5429, 1995 U.S.Dist. LEXIS 5399, at *17 (S.D.N.Y. April 15, 1995). There is no em-

ployment application here, so obviously the verbal assurances relied upon by plaintiff were not incorporated therein. The record is likewise bare of any proof that plaintiff rejected other employment offers in reliance upon Columbian's supposed assurances that his position there would be permanent. Plaintiff Wanamaker has also failed to come forth with any proof that Columbian had a personnel handbook or manual providing that he would be dismissed only for just cause. Although the record is not entirely clear on this point, the only *Weiner* factor which arguably plaintiff comes close to satisfying is that perhaps he was induced to leave his prior employment based upon these claimed verbal assurances that he would remain as Columbian's in-house counsel for the rest of his career. Even so, that factor alone cannot bring plaintiff Wanamaker within the narrowly tailored *Weiner* exception. *See Kelly, supra,* 717 F.Supp. at 234 (plaintiff could not invoke protection of *Weiner* based upon "abstract assurances of future employment"); and *O'Keefe v. Niagara Mohawk Power Corp.,* 714 F.Supp. 622, 632 (N.D.N.Y.1989) (alleged oral assurances such as "permanent assignment" insufficient to state an actionable express limitation under *Weiner*). Consequently, because plaintiff has not raised a genuine issue of material fact with respect to his employment at-will status, Columbian's motion for summary judgment on this breach of contract cause of action is granted.

■ In short, the court finds that defendants are entitled to summary judgment dismissing all three of plaintiff's remaining causes of action. "According to the Second Circuit 'summary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict[,]'" and the court finds that this is such a case. *See Henley v. FDA The Commr. of Food & Drugs,* 873 F.Supp. 776, 779 (E.D.N.Y.1995) (quoting *United National Ins. Co. v. Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993)).

### D. *Individual Defendants*

Based upon the court's rulings here today, Columbian's argument that there is no basis

for assessing liability against the individual defendants is rendered moot. Therefore, the court sees no need to address the same.

### E. Attorney's Fees and Costs

Columbian contends that because plaintiff's claims "have proven to be totally baseless," it should be entitled to attorney's fees and costs "in order to sanction plaintiff and deter others similarly situated from bringing such wholly baseless claims." Defendants' Supporting Memorandum at 47. In its discretion, the court declines to grant such relief.

Accordingly, for the reasons set forth herein, the defendants' motion for summary judgment is granted and the complaint as against all defendants is dismissed. That aspect of defendants' motions seeking sanctions, in the form of attorney's fees and costs is denied however. The Clerk of the Court is directed to entered judgment in accordance with this memorandum-decision and order.

IT IS SO ORDERED.